JUDGE PAULEY

13 CIV 3982

James H. Power
Marie E. Larsen
HOLLAND & KNIGHT LLP
31 West 52nd St.
New York, NY 10019
Telephone: (212) 513-3200
Telefax: (212) 385-9010
james.power@hklaw.com
marie.larsen@hklaw.com



ATTORNEYS FOR PLAINTIFF
LAURITZEN BULKERS A/S

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAURITZEN BULKERS A/S,<br><br>       Plaintiff,<br><br>    -against-<br><br>JIT INTERNATIONAL CORPORATION LIMITED, and PALMAILLE HOLDINGS LTD.<br><br>       Defendants. | Civil Action No. 13-CV_____ |

## VERIFIED COMPLAINT

Plaintiff, Lauritzen Bulkers A/S ("Lauritzen" or "Plaintiff") submits this verified complaint against JIT International Corporation Limited a/k/a JIT and Palmaille Holdings Ltd. ("JIT" and "Palmaille Holdings," collectively "Defendants"), foreign corporations, and alleges as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

2.     Lauritzen brings this action to obtain security for a maritime claim pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule B"), seeking an order and writ of attachment over property of Defendant including but not limited to bank accounts of Defendant beneficially maintained at garnishee financial institutions within the District.

3.     At all times relevant hereto, Lauritzen Bulkers A/S is and was a foreign business entity organized under the laws of a foreign state.  Lauritzen has a place of business at 28, Sankt Annae Plads, P.O. Box 2147, 1291 Copenhagen K, Denmark.

4.     At all times relevant hereto, JIT International Corporation Limited is and was a foreign business entity organized under the laws of a foreign state.  JIT maintains a business address at Building 40, No. 97, Songlin Road, Haiyi Villa, Shanghai, China 200120 and is further believed to operate and maintain an address at Building 22, No. 97, Songlin Road, Haiyi Villa, Shanghai, China 200120.  JIT is regularly involved in the carriage of cement and steel products into West Africa and South America from China, and is wholly owned by Xu Dapeng, the sole director of the company.

5.     At all times relevant hereto, Palmaille Holdings Ltd. is and was a foreign business entity organized under the laws of a foreign state.  Palmaille Holdings Ltd. maintains an address at Building 22, No. 97, Songlin Road, Haiyi Villa, Shanghai, China 200120.

6.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1333 because this action arises from a maritime contract, i.e., cargo damage under a charter party agreement and a subcharter thereto.

7.      On 11 January, 2007, Lauritzen and non-party Allocean Charters Limited, executed a charter party on the New York Produce Exchange form for the charter of the vessel "OCEAN PREDATOR". The charter party is governed by English law and calls for arbitration in London.

8.      Allocean Charters Limited was later renamed Lomar Charters Limited ("Lomar"), and the OCEAN PREDATOR was substituted by the "OCEAN PREFECT" (the "Vessel").

9.      On 19 October 2012 Lauritzen and JIT executed a charter party on the New York Produce Exchange form for the subcharter of the vessel "OCEAN PREFECT". The charter party is governed by English law and calls for arbitration in London. A true and correct copy of the Subcharter is attached hereto as Exhibit 1.

10.     Hire payments were received from Defendant JIT and Lauritzen also received payment for charter hire for the Vessel from Defendant Palmaille Holdings, as paying agent on behalf of Defendant JIT.

11.     A dispute arose out of damage suffered to cargo carried on board the Vessel during a voyage from China to Venezuela.

12.     Lomar has secured cargo interests' claim by way of a USD 20 million (plus interests and costs) Letter of Undertaking (LoU), following the arrest of the Vessel at Guanta, Venezuela by cargo interests. A true and correct copy of the LoU posted by the UK P&I Club is attached hereto as Exhibit 2.

3

13.     Lauritzen have secured Lomar by way of a USD 20 million (plus interests and costs) Letter of Undertaking.  A true and correct copy of the LoU posted by the West of England P&I Club is attached hereto as Exhibit 3.

14.     Under the back-to-back Subcharter incorporating the Inter-Club Agreement (ICA) which creates an entitlement to security based on reciprocity, JIT is similarly obligated to provide security for claims by Laurtizen to be made in London arbitration pursuant to the Subcharter.

15.     Lauritzen has sent a written demand to JIT calling upon them to furnish security for the claim.  A true and correct copy of the demand is attached hereto as Exhibit 4.  To date, JIT has not responded to the notice and has not voluntarily posted security for the claim and has indicated it is unwilling to voluntarily do so.

16.     The Charter and Subcharter are governed by English law, which routinely allows for costs, including a reasonable allowance for attorney's fees incurred in the foreign arbitration proceeding.

17.     As best as can now be estimated, Lauritzen expects to recover up to $20 million plus interests and costs in arbitration from JIT.

## APPLICATION FOR ISSUANCE OF RULE B ATTACHMENT

18.     Lauritzen seeks to attach JIT's property including, but not limited to, bank account funds and credits, or funds or credits held for the benefit of JIT and debts owed to Defendant presently located in this District or in the hands of third parties within this District.

4

19.     JIT and Palmaille Holdings are not found within the Southern District of New York within the meaning of Rule B of the Supplemental Rules for Admiralty Claims of the Federal Rules of Civil Procedure.

20.     JIT and Palmaille Holdings each maintain at least one active U.S. dollar bank account at Hong Kong and Shanghai Banking Corporation, Limited ("HSBC").   HSBC has certified in accordance with U.S. law that it is a "foreign bank" within the meaning of 31 C.F.R. §103 *et seq.* that maintains a U.S. dollar "correspondent account" as defined in 31 C.F.R. §103 *et seq.* on behalf of its customers.[1]   A true and correct copy of the Certification of HSBC pursuant to 31 C.F.R. §103 is attached hereto as Exhibit 5.

21.     Further, HSBC has certified that HSBC Bank USA is a resident of the United States and is authorized to accept service of legal process on behalf of the Foreign Bank HSBC at the following address: One HSBC Centre, 24 Floor, Buffalo, NY 14203.  Exhibit 5 at 3.

22.     This court also has jurisdiction over HSBC as a garnishee due to its correspondent account in New York at HSBC Bank USA, N.A. and its possession of funds of the Defendants.

23.     As is required, under U.S. banking law, the monetary U.S. dollar credits associated with U.S. dollar accounts of foreign entities, and this account in particular, are in fact in the hands of third party banking institutions in New York commonly referred to as Correspondent Banks.   Correspondent Banks charge fees for the maintenance of these correspondent accounts and fees and/or commissions for transfers made in and out of these accounts.

---

[1] On March 1, 2011 certain regulations were moved from 31 C.F.R. Part 103 to 31 C.F.R. Chapter X.

24.    Typically, correspondent accounts of foreign banks are maintained in the United States to effect transactions in U.S. Dollars. The assets in the form of credits, or otherwise in those correspondent bank accounts are in most instances the property of the foreign banks' customers.

25.    Specifically, JIT and its paying agent Palmaille Holdings each have at least one U.S. dollar bank account at HSBC and the "attachable interest" associated with this particular account is known to be located within this District because, among other reasons, it is a subaccount of HSBC's correspondent account with HSBC Bank USA, N.A. in New York ("HSBC USA"). Print outs of the transfer confirmations from beneficiary Danske Bank with payment details including HSBC USA as a correspondent bank with which HSBC holds accounts in U.S. dollars is attached hereto as Exhibit 6.

26.    These New York based accounts are solely for the purpose of foreign banks maintaining their customers' U.S. dollar subaccounts and associated U.S. dollar credits.

27.    At least one transfer made for the charter hire payment of the Vessel was made from an account of Defendant JIT (Exhibit 6 at 1), while at least one later payment was made by Defendant Palmaille Holdings (Exhibit 6 at 2) on behalf of Defendant JIT.

28.    Defendant Palmaille Holdings is in possession and control of Defendant JIT's funds in its role as paying agent and holds funds of or for the benefit of Defendant JIT in at least one account at HSBC. As paying agent, Palmaille Holdings makes funds transfers on behalf of Defendant JIT for charter hire on one or more vessels. The attachable interest in those funds and/or debts is located within the jurisdiction of this Court.

29.     HSBC and its affiliates have established U.S. banking relationships with other New York located Correspondent Banks in addition to HSBC USA.  As such, it is highly likely that other Correspondent Banks act solely or collectively on behalf of HSBC and its related entities for the purpose of processing U.S. dollar transactions for HSBC and its customers.

30.     Lauritzen seeks issuance of an order from this Court directing the Clerk of the Court to issue a process of maritime attachment and garnishment pursuant to Rule B, attaching Defendants' property, including property in the form of credits, debts or funds for the ultimate benefit of Defendants in the hands of HSBC USA and other Correspondent Banks for the purpose of securing Lauritzen's claims as described herein.

### PRAYER FOR RELIEF

**WHEREFORE**, Lauritzen prays as follows:

1.     That a summons with process of attachment and garnishment may issue against Defendants JIT International Corporation Limited and Palmaille Holdings Ltd., and that if they cannot be found, that their property whether real or personal, tangible or intangible presently existing or hereinafter arising which could be assigned or transferred including, but not limited to cash, deposits, instruments, securities security entitlements, security accounts, equity interests, credits or debits assigned to or for the benefit of Defendants at Correspondent Banks within the district may be attached in an amount sufficient to answer Lauritzen Bulkers A/S's claims;

2.     That Defendants JIT International Corporation Limited and Palmaille Holdings Ltd., and any other person claiming an interest therein, may be cited to appear in the matters aforesaid and that judgment be entered against JIT and Palmaille Holdings and in favor of Lauritzen in an amount to be determined at trial, but not less than $20,000,000.00;

7

3.      That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and,

4.      That this Court grant Lauritzen such other and further relief which it may deem just and proper.

Respectfully submitted,

James H. Power
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 513-3494
Fax: (212) 385-9010
Email: james.power@hklaw.com

## VERIFICATION

STATE OF NEW YORK          )
                          :ss.:
COUNTY OF NEW YORK         )

I, James H. Power, a Partner at Holland & Knight LLP, verify that I have read the foregoing Verified Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge. I make this declaration on behalf of, and with the authorization of, Lauritzen Bulkers A/S because Lauritzen Bulkers A/S is a foreign corporation, having no officer or director within this District.

I verify under penalty of perjury that the foregoing is true and correct.

Dated  June  11 , 2013

James H. Power

Sworn to before me on

11  June, 2013

[Notary Public]

Elvin Ramos
Notary Public, State of New York
NO. 01RA4870243
Qualified in Queens County
Certificate filed in New York County
Commission Expires September 2, 2014

9

# EXHIBIT 1

*FIRST ORIGINAL*

# Time Charter

GOVERNMENT FORM

*Approved by the New York Produce Exchange*

November 6th 1913—Amended October 20th 1921 August 6th 1931 October 3rd 1946

1 This Charter Party made and concluded in 19⁴⁴ day of October 192012
2 Between Hamison Bunkers A/S
3 Owner of the good Cupenhagen Steamship Motorship OCEAN PREFECT of built 2003
4 of 29,323 tons gross register and 17,592 tons net register having engines of — indicated horse power
5 and with hull machinery and equipment in a thoroughly efficient state and classed Lloyds Register
6 at of about 66,416/65,295 m cubic meter feet grain/bale capacity and about 53,035 metric tons of 2240 lbs
7 deadweight capacity (cargo and bunkers including fresh water and stores not exceeding one and one half percent of ships deadweight capacity
8 allowing a minimum of fifty tons) on a draft of 12 16 ni feet meter on sai Same fuel and nuts receipt tier bunkers
9 which are of the capacity of about tons of fuel and capable of steaming fully laden throughout the currency of this charter party under good weather
10 conditions of min Beaufort force 4 and Douglas Sea state 3 about 13 5(1)/14 5(B) knots on a consumption of about 29 metric tons of H O (RMG 380)
11 if set best Welsh coal best grade fuel oil best grade Diesel oil
12 now and JH International Corporation Limited, Address Building 40, No 97 Songlin Road Huai Villa, Shanghai, China 200120 Charterers of the City of Shanghai
13 Witnesseth, That the said Owners agree to let and the said Charterers agree to hire the said vessel from the time of delivery for
14 about one time charter trip via safe port(s)/safe berth(s)/ safe anchorage(s) China to Caribs and north coast of South America but always excluding Orinoco river and in strictly
    accordance with Owners trade limits with harmless and non dangerous general steel cargoes always within vessels natural carrying
    capacity/restrictions and at masters approval Estimated duration about 65 70 days without guarantee
15 within below mentioned trading limits
16 Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter but Charterers remaining responsible for
17 the fulfillment of this Charter Party Acceptance of delivery by Charterers shall not constitute any waiver of Owners obligations hereunder
18 Vessel to be placed at the disposal of the Charterers in dropping last outward sea pilot Jinzhou China any time day and night Sundays holidays included
19
20 in such dock or at such wharf or place (where she may safely lie always afloat at all times of tide except as otherwise provided in clause No 6) as
21 the Charterers may direct If such dock wharf or place be not available time to count as provided for in clause No 5 Vessel on her delivery this Charter period to be
22 ready to receive any permissible cargo with clean swept holds Owners have the option to perform the hold cleaning en route to the first loading port
    and tight staunch strong and in every way fitted for the ordinary cargo service having water ballast winches and
23 donkey boiler with sufficient steam power or if not equipped with donkey boiler then other power sufficient to run all the winches at one and the same
24 time (and with full complement of officers seamen engineers and firemen for a vessel of her tonnage) throughout the period of this Charter vessel to be employed in carrying lawful merchan
25 dise including petroleum or its products in proper containers excluding See Clause 77
26 (vessel is not to be employed in the carriage of Live Stock but Charterers are to have the privilege of shipping a small number on deck at their risk
27 all necessary fitting and other requirement to be for account of Charterers) in such lawful trades between safe port and/or port in British North
28 America and/or United States of America and/or West Indies and/or Central America and/or Caribbean Sea and/or Gulf of Mexico and/or
29 Mexico and/or South America and/or Europe
30 and/or Africa and/or Asia and/or Australia and/or Tasmania and/or New Zealand but excluding Magdalena River River St Lawrence between
31 October 31st and May 15th Hudson Bay and all unsafe ports also excluding when out of season White Sea Black Sea and the Baltic
32 Within Institute Warranty Limits See Clause 76
33
34
35 as the Charterers or their Agents shall direct on the following conditions
36       1 That the Owners shall provide and pay for all provisions during water wages and consular shipping and discharging fees of the Crew
        shall pay for the
37 insurance of the vessel also for all the cabin deck engine room and other necessary stores including boiler water and maintain hull class and keep
38 the vessel in a thoroughly efficient state in hull cargo spaces machinery and equipment with all certificates necessary to comply with requirements at
    ports of call and en route and during the service
39       2 That whilst on hire the Charterers shall provide and pay for all the fuel except as otherwise agreed Port Charges compulsory or
    customary Pilotages including pilotage in Bosporus and Charterers will pay customary case and pilot requested by Master in Dardanelles
    and Great Belt Agencies canal tolls Commissions
40 Consular Charges (except those pertaining to the Crew and flag) and all other usual expenses except those before stated but when the vessel puts into
41 a port for causes for which vessel is responsible then all such charges incurred shall be paid by the Owners Fumigations ordered because of
42 illness of the crew to be for Owners account Fumigations ordered because of the use of cargoes carried in ports visited while vessel is employed under this
43 charter to be for Charterers account All other fumigations to be for Charterers account after vessel has been on charter for a continuous period
44 of six months in no a
45 Charterers are to provide necessary dunnage lashing material and shifting boards also any extra fittings requisite for a special trade or unusual cargo but
46 Owners to allow them the use of any dunnage and shifting boards already on board vessel Charterers to have the privilege of using shifting boards
47 for dunnage they making good any damage thereto
48       3 That the Charterers at the port of delivery and the Owners at the port of delivery shall take over and pay for all fuel remaining on
49 board the vessel at the current prices in the respective ports the vessel to be delivered with not less than — to is and not more than
50 tons and to be delivered with not less than — tons and not more than — tons See Clause 40
51       4 That the Charterers shall pay for the use and hire of the said Vessel at the rate of USD 5,000 per day or pro rata including overtime for first
    65 days thereafter USD 9,000 per day or pro rata Should the vessel be placed off hire for any legitimate reason upto and including the
    65th day such off hire time will be added to the 65 days and paid at USD 3,000 daily or pro rata payable 15 days in advance First hire

This document is a computer generated NYPE 46 form printed by BIMCO s *idea* Any insertion or deletion to the form must be clearly visible In event of any modification being made to the pre printed text of this document which is not clearly visible the text of the original printed NYPE 1946 document shall apply BIMCO assumes no responsibility for any loss damage or expense caused as a result of discrepancies between the original printed NYPE 1946 document and this computer generated document

plus bunkers value on delivery to be paid within 3 banking days after vessel's delivery

52 _____ United States Currency per ton on vessel's total deadweight carrying capacity, including bunkers and

53 stores on _____ summer freeboard, per Calendar Month, commencing on and from the day and hour of her delivery, as aforesaid, and at

54 and after the same rate for any part of day month-hire, to continue until the hour of the day of her re-delivery in like good order and condition, ordinary

55 wear and tear excepted, to the Owners (unless lost) if on dropping last outward sea pilot main port South Coast South America, Colombia/Venezuela

range including Caribana excluding Cuba, but in Atlantic Brasin any time day or night Sundays and holidays included

56 unless otherwise mutually agreed. Charterers are to give Owners not less than 18/15 10/7/5 days approximate notice with intended

discharging port and 3/2/1 days definite

57 notice of vessel's expected date of re-delivery and probable port

58 5  Payment of said hire to be made in respect Clause 69  New York in Cash in United States Currency semi-monthly in advance and for the

last half month of

59 part of same the approximate amount of hire and should same not cover the actual time hire is to be paid for the balance day by day as it becomes

60 due if so required by Owners unless bank guarantee or deposit is made by the Charterers otherwise failing the punctual and regular payment of the

61 hire or bank guarantee or on any breach of this Charter Party the Owners shall be at liberty to withdraw the vessel from the service of the Char-

62 terers without prejudice to any claim they (the Owners) may otherwise have on the Charterers

time-to-count-from-7 a m on the morning day

63 following; that on which written notice of readiness has been given to Charterers or their Agents before 4 p m  but if required by Charterers they

to have the privilege of using vessel at once whilst time used to count as hire

65 Cash for vessel's ordinary disbursements at any port may be advanced if required by the Captain and/or Owners by the Charterers or their

Agents subject

66 to 2 /% commission and such advances shall be deducted from the hire  The Charterers however shall in no way be responsible for the application

67 of such advances

68 6  That the cargo or cargoes be laden and/or discharged in any safe dock or at any safe wharf or safe place that Charterers or their

Agents may

69 direct provided the vessel can safely lie always afloat at any time of tide except at such places where it is customary for similar size vessels to safely at

River Plate South Brazilian ports Buena Ventura Nigeria Sudan only

70 lie aground

71 7  That the whole reach of the Vessels Hold  Decks  and usual places of loading  not more than she can reasonably stow and carry  also

72 accommodations for Supercargo if carried  shall be at the Charterers disposal  reserving only proper and sufficient space for Ships officers crew

73 tackle  apparel  furniture provisions stores and fuel  Charterers have the privilege of passengers as far as accommodation allow  Charterers

74 paying Owners _____ per day per passenger for accommodation stores and meals  However it is agreed that in case any fine or extra expenses be

incurred in the consequence of the carriage of passengers Charterers are to bear such risk and expense

76 8  That the Captain shall prosecute his voyages with the utmost despatch and shall render all customary assistance with ship's crew and

77 boats  The Captain (although appointed by the Owners)  shall be under the orders and directions of the Charterers as regards vessel's employment

and

78 agency and Charterers are to load  stow  and trim secure tally and discharge and lash unlash and dunnage the cargo at their expense under the

supervision of the Captain if he is requested to do so by Charterers  and where is to sign Bills of Lading for

79 cargo is presented in strict conformity with Mate's or Tally Clerk's receipts

80 9  That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain Officers or Engineers the Owners shall on

81 receiving particulars of the complaint investigate the same and if necessary make a change in the appointments

82 10  That the Charterers shall have permission to appoint a Supercargo who shall accompany the vessel at his own risk and see that voyages are prosecuted

with the utmost despatch  He is to be furnished with free and suitable accommodation and same fare as provided for Captain's table Charterers

paying at the

84 rate of $1 00 $15 00 per day  Owners to victual Pilots and Customs Officers  and also  when authorized by Charterers or their Agents to victual

Tally

85 Clerks Stevedores Foreman etc  Charterers paying Owners USD 1 300 per month or pro rata towards cable victualing and entertainment etc at the

current rate per meal  for all such victualing  See Clause 86

86 11  That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions in writing  and the

87 Captain shall keep a full and correct Log of the voyage or voyages  which are to be patent to the Charterers or their Agents and furnish the Char-

88 terers  their Agents or Supercargo when required  with legible deck and engine a true copy of daily Logs in English Language  showing the course

of the vessel and distance run and the con-

89 sumption of fuel

90 12  That the Captain shall use diligence in caring for the ventilation of the cargo  Vessel has natural ventilation only

91 13  That the Charterers shall have the option of continuing this charter for a further period of _____

92 _____ _____ _____

93 on giving written notice thereof to the Owners or their Agents _____ days  previous to the expiration of the first named term  or any deemed option

94 14  That if required by Charterers time not to commence before  00 01 hours LT 21  October 2012  should vessel

95 not have given written notice of readiness on or before  24 00 hours LT 29th October 2012  but not later than 4 p m  Charterers or

96 their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness  Owners to give Charterers delivery notices

approximate with range 45/2015/10/7 days approximate and definite 3/2/1 days of expected port and date of delivery  Time on delivery/redelivery to

be based on GMT  but hire can to be based on local time

97 15  That in the event of the loss of time from deficiency and/or default of Owners  men and/or strike or sabotage by officers/crew or

deficiency of or ship's stores  fire breakdown or damages to hull machinery or equipment

98 grounding  detention by average restraints to ship or cargo drydocking for the purpose of examination or painting bottom or by any other cause

99 whatsoever for which Owners are found to be under terms of this Charter Party and unless caused by Charterers preventing  the full working of the

vessel  the prevention of hire shall cease for the actual time thereby lost  and if upon the voyage the speed be reduced by

100 defect in or breakdown of any part of her hull machinery or equipment  the time so lost and the cost of any extra fuel consumed in consequence

101 thereof and all extra direct related expenses shall be deducted from the hire  See Clause 49

102 16  That should the Vessel be lost money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be

103 returned to the Charterers at once  The Act of God  enemies  fire restraint of Princes Rulers and People  and all dangers and accidents of the Seas

104 Rivers Machinery Boilers and Steam Navigation and errors of Navigation throughout this Charter Party  always mutually excepted

This document is a computer generated NYPE 46 form printed by authority of BIMCO  Any insertion or deletion to the form must be clearly visible  In event of any modification being made to the pre-printed text of this document which is not clearly visible the text of the original BIMCO approved document shall apply  BIMCO assumes no responsibility for any loss  damage or expense caused as a result of discrepancy between the original BIMCO approved document and this computer generated document

105  The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress and to deviate for the
106  purpose of saving life and property

107  17. That should any dispute arise between Owners and the Charterers the matter in dispute shall be referred to arbitration in London
     English Law to apply and the award given by the arbitrators shall be final and binding on the both parties. The arbitrators shall be
     shipping men conversant with shipping matters LMAA for claims not exceeding the amount of USD 50,000. See rider Clause 73 for
     comprehensive Arbitration Clause three persons at New York,
108  one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for
109  the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men

110  18. That the Owners shall have a lien upon all cargoes, and all sub-freights and sub-hires for any amounts due under this Charter, including
     General Average

111  age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess
112  deposit to be returned at once. Charterers will not suffer, nor permit to be continued any lien or encumbrance incurred by them or their agents which
113  might have priority over the title and interest of the owners in the vessel

114  19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and
     Crews' proportion General Average shall be adjusted, stated in London according to York-Antwerp Rules of 1994 or any amendments thereto and
115  settled according to Rule 1 to 15 inclusive 17 to 22 inclusive and Rule F of
116  York-Antwerp Rules 1924, at such port or place in the United States, as may be selected by the carrier, and as to matters not provided for by these
117  Rules, according to the laws and usages at the port of London New York.  In such adjustment disbursements in foreign currencies shall be exchanged
     into
118  United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at
119  the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or
120  bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier
121  or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if
122  required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the
123  carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the
124  place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in
125  United States money

126  In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever,
127  whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible by statute, contract, or otherwise the
128  goods, the shipper and the consignee jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,
129  losses, or expense, of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the
130  goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or
131  ships belonged to strangers

132  Provisions to General Average in accordance with the above are to be included in all bills of lading issued hereunder Charter hire not to
     contribute to General Average

133  20. Fuel used by the vessel while off hire also for cooking, condensing water, or for grates and stoves to be agreed to as to quantity and the
134  cost of replacing same to be allowed by Owners

135  21. That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a
136  convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months reckoning from
137  time of last painting and payment of the hire to be suspended until she is again in proper state for the service
138
139
140  22. Owners shall maintain the gear of the ship as fitted, providing gear maximum in accordance with description clause (for all cranes
     and power derricks) capable of handling lifts up to three tons also

141  providing ropes, falls slings and blocks for on board. If vessel is fitted with cranes derricks capable of handling heavier lifts, Owners are to provide
     necessary gear for

142  same, otherwise equipment and gear for heavier lifts shall be for Charterers account. Owners also to provide on the vessel as on board sufficient
     light for night work free of expense to Charterers lantern, and oil for
143  night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense. The
144  Charterers to have the use of any gear on board the vessel

145  23. Vessel to work night and day, if required by Charterers and all winches to be at Charterers' disposal during loading and discharging,
146  steamer to provide one winchman per hatch to work winches day and night, as required Charterers agreeing to pay officers, engineers, winchmen,
147  deck-hands, and dockeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rules of the
148  port, or labour unions prevent crew from driving winches, shore Winchmen to be employed and paid for paid by Charterers. In the event of a disabled
149  winch or winches or insufficient power to operate winches, Owners to pay for shore appliances engine or engines in lieu thereof if required and pay any loss of time
     occasioned
150  thereby See Clause 48

151  24. It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained
152  in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels
153  etc.," in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clauses, both
154  of which are to be included in all bills of lading issued hereunder

U S A Clause Paramount

156  This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States approved April
157  16, 1936, which shall be deemed to be incorporated herein and nothing herein contained shall be deemed a surrender by the carrier of
158  any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading
159  be repugnant to said Act to any extent, such term shall be void to that extent, but no further

Both to-Blame Collision Clause

161  If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the
162  Master mariner pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried
163  hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship in so far as such loss
164  or liability represents loss of, or damage to or any claim whatsoever of the owners of said goods paid or payable by the other or non-
165  carrying ship or her owners to the owners of said goods and set off recouped or recovered by the other or non carrying ship or her

This document is a computer generated NYPE 46 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the pre printed text of this document which is not clearly visible the text of the original BIMCO approved document shall apply. BIMCO assume no responsibility for any loss, damage or expense caused as a result of discrepancies between the original BIMCO approved document and this computer generated document.

166     owners as part of their claim against the carrying ship or carrier

167     25  The vessel shall not be required to force ice nor follow ice breaker nor enter any ice-bound port or any port where lights or light-
ships have been or are about to be with

168     drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the

169     port or to get out after having completed loading or discharging

170     26  Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers  The owners to remain responsible for the

171     navigation of the vessel, acts of pilot and tugboat, insurance, crew, and all other matters, same as when trading for their own account

172     27  A commission of 2¾1 25 per cent is payable by the Vessel and Owners to

173    Maersk Broker Asia Limited

174    on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter

175     28  An address commission of 2¾3 75 per cent payable to  Charterers  on the hire earned and paid under this Charter

Clause 29 to 103 both inclusive, as attached, are to be fully incorporated in this Charter Party
By cable authority from

~~The original Charter Party in our possession~~                    As        For Owners

~~BROKERS~~

Owners                                       Charterers

For and on behalf of
Lauritzen Bulkers A/S

Martin Sato
General Manager

This document is a computer generated NYPE 46 form printed by authority of BIMCO  Any insertion or deletion to the form must be clearly visible  In event of any modification
being made to the pre printed text of this document which is not clearly visible  the text of the original BIMCO approved document shall apply  BIMCO assumes no
responsibility for any loss  damage or expense caused as a result of discrepancies between the original BIMCO approved document and this computer generated document

## ADDITIONAL CLAUSES TO MV 'OCEAN PREFECT' CHARTER PARTY DATED 19TH OCTOBER 2012

**Clause 29. Superficial Inspection**

Charterers have the option of holding a superficial inspection any time of this charter at their time and expenses, Owners and Master giving facility and assistance to carry this out

**Clause 30  Bunkers' Price & Quantity**

Bunkers on delivery to be as delivered to the Owners by the current Charterers at the end of the current charter about 500-800 MT of IFO at a fixed price of USD 700 per MT, and about 80-110 MT of MGO at a fixed price of USD 1100 per MT

Bunkers on redelivery to be about same quantity as at delivery and prices also to be same prices as at delivery

Value of delivery bunkers to be paid together with the first hire payment  The charterers may deduct from the last sufficient hire payments the estimated value of bunkers on redelivery

Charterers are allowed to bunker vessel for own account prior to delivery provided same does not interfere with vessel's operations  Owners have the right to bunker the vessel, prior redelivery for their own account, provided this operation does not interfere with charterers cargo operations

Charterers to provide the vessel with bunkers in accordance with ISO standard 8217 2005 as follows
IFO 380 CST class rmg380 and if this grade is unavailable rmfl80
MGO class DMA max 0 10% sulphur

in order to comply with the terms and conditions of the various bunker suppliers, the sample to govern quality shall be sample drawn by the suppliers and witnessed by ship's chief engineer or surveyor appointed by owners  analysis of said sample in accordance with recognized ISO test methods at a mutual agreed reputable and dedicated laboratory shall be binding and conclusive for both parties

Quantity supplied shall be finally determined by sounding of the tanks of the delivering barge or by reading of meters at shore installation or by independent surveyor, if an independent surveyor is appointed, and there is a contradiction the surveyors' finding to be the accepted ones

**Clause 31. In Lieu of Hold Cleaning**

Charterers option to redeliver the vessel unclean against paying USD 4 500 lump sum in lieu of hold cleaning including removal of dunnage/ lashing removal and disposal, except for U S A/U K/Japanese ports where compulsory removal disposal to be for Charterers' account  in which case, Charterers to pay USD 3 500 lump sum as in lieu of hold cleaning charge

**Clause 32  On/Off Hire Survey**

Joint on/off - hire survey to ascertain the vessel's condition and quantity of bunkers remaining on board shall be carried out at delivery port or at first load port and at redelivery ports  Joint on hire survey to be carried out by independent surveyor on delivery in Owners' time unless concurrently with cargo operations and joint off-hire survey by independent surveyor on redelivery in Charterers' time, but expenses to be equally shared between Owners and Charterers



1

# ADDITIONAL CLAUSES TO MV 'OCEAN PREFECT' CHARTER PARTY DATED 19TH OCTOBER 2012

### Clause 33. Stevedore Damage

Notwithstanding anything to the contrary in this Charter Party or by operation of the law, Charterers to remain responsible for stevedore damage as stated hereunder:
Stevedores to be appointed and paid for by the Charterers but to work under the supervision of the Master. Should any damage be caused by the stevedores to the vessel or her fittings, then the Master has to let the stevedores try and repair the damage and will try and settle the matter directly with them in the first instance. If the damage cannot be repaired by the stevedores, then the Master must endeavor to obtain written acknowledgement of the damage and liability from the stevedores. Master has to notify the Charterers or their agents in writing of such damage within 24 hours after such damage occurs or in the case of hidden damage as soon as is discovered but in any case no later than the time of redelivery.
The Charterers have the privilege of redelivering the vessel without repairing the stevedores' damage for which the Charterers are responsible, incurred during the currency of this Charterer as long as the damage does not affect the seaworthiness of the vessel, class, trading worthiness. But the Charterers undertake to reimburse the cost of repairs against the production of repair bills by a dockyard, which is however to be in conformity with the off-hire surveyor's report with respect to the extent of such damage and the bill/cost not to be unreasonable unless otherwise agreed and Owners endeavour to minimize the repairing cost.
In case the stevedores' damage affects the vessel's seaworthiness, class, trading worthiness, then such damage to be repaired prior to sailing the Port of occurrence at Charterers' time, risk and expense to class surveyor's satisfaction

### Clause 34. Cargo Gear & Equipment

Vessel's cargo gear, all other equipment to comply with the regulations and/or requirement in effect at port of call and canals and the vessel is at all times in possession of valid up-to-date certificates onboard necessary to comply with such regulations and/or requirement.

A particular reference is made to the United States Department of Labour Safety and Health Regulations set forth in Part III Code of the Federal Regulations and also all navigation (loading and unloading safety measure) regulations, 1961 or any amendments thereto, and related requirements or recommendations. Although other provision of this time charter make it the responsibility of Owners it is agreed that, should the vessel not meet the regulations and/or requirement, Owners to make immediate corrective measures and that time thereby lost - any stevedores standby time for that particular shift and expenses involved - to be for Owners' account.

### Clause 35. Boycott

Should the vessel be boycotted, picketed, blacklisted or similar incident at any port or place by shore and/or port labours and/or tug boats and/or pilots, or by the government and/or any authority by reason of the terms and conditions of which members of the officer/crew were employed, vessel has Manning Agreements accepted by ITF or equivalent or by reason of other vessels under the same ownership, management, operation or control, or by reason of vessel's fitting and/or her other equipment, all directly related expenses for the vessel but not included any opportunity loss incurred by the Charterers, and any direct expenses incurred therefrom to be for Owners' account and Charterers are entitled to put the vessel off-:hire for any time lost by such reason.



2

## ADDITIONAL CLAUSES TO MV 'OCEAN PREFECT' CHARTER PARTY DATED 19TH OCTOBER 2012

**Clause 36. Eligibility for Bunkering**

Owners confirm that vessel is eligible for bunkers in the United States of America, its territories and possessions in accordance with governing export control regulation, also Owners confirm that vessel is eligible for bunkers in any other countries, if required

**Clause 37. Oil Spillage**

With regard to oil pollution Owners guarantee a valid certificate of financial responsibility in compliance with requirements of U S water quality improvement act of 1970 and OPA 90 and any amendments thereto

**Clause 38. Cuba/Israel Black List**

To the best of their knowledge, Owners confirm that this vessel has not traded Israel and is not blacklisted by the boycott league in Damascus

**Clause 39. Vaccination**

Owners to arrange at their expenses that Master, officers and crew of the vessel hold valid vaccination certificates against yellow fever, smallpox, cholera or other necessary health certificates during this charter

**Clause 40 Stowage Collection of Dunnage, etc**

Owners and Master to undertake best efforts to co operate with Charterers and Master to make best efforts to collect restore and provide any useful dunnage lashing etc including preslings/wire sling not broken for next use after completion of the voyage, during the currency of this charter if requested to do so by Charterers

**Clause 41. Hatch Opening/Closing, etc.**

Provided time and safety permit, before and upon arrival at a port, vessel's officers/crew to shape up vessel's hatches, cranes and gangway in order to commence loading and/or discharging without delay Opening/closing of all hatch covers may be done by officers/crew provided shore regulations permit

**Clause 42. Smuggling**

Any delay expenses and/or fines incurred on account of smuggling to be for Charterers' account if caused by Charterers' supercargo, their staff or Charterers' agents or to be for Owners' account if caused by officers and/or crew or Owners' agents

**Clause 43. Gangway Watchmen**

Gangway watchmen if requested by Owners/Master to be for Owners' account other cases including compulsory gangway watchmen to be Charterers' account

**Clause 44. Owners' Agent**

Owners to appoint the Owners' agents to attend all Owners' matters such as general average, dry-docking, hospitalization, repatriation of crew, repair, supply of vessel's stores and provisions, etc



## ADDITIONAL CLAUSES TO MV 'OCEAN PREFECT' CHARTER PARTY DATED 19TH OCTOBER 2012

In case Owners are unable to arrange same, Charterers to agree to have their agents attend such matters with Owners paying actual expenses basis prevailing tariff. However Charterers' agents to attend to small matters such as delivery of crew mails without charging Owners any fee.

Notwithstanding the above Charterers' agents to assist with crew charges and Owners paying for the services at cost.

### Clause 45. Owners' Disbursement

Charterers shall have the liberty to deduct USD500 per port from hire payment for Owners' account. Charterers' have the further liberty to deduct estimated value of bunkers on redelivery and estimated amount of disbursements which to be substantiated as soon as possible for Owners' account.

### Clause 46. Deviation Put Back

In the event of loss of time either in port or at sea deviation from the course of the voyage or putting back whilst on voyage, caused by sickness of or an accident to or misconduct by Master officers/crew, or caused by stowaway refugee or any person on board vessel other than persons traveling by request of Charterers or by reason of the refusal of Master or officer(s) or crew to perform their duties or of an accident or breakdown to the vessel or drydocking or periodical survey, the hire shall be suspended from the time of inefficiency in port or at sea, deviation or putting back until vessel is again efficient in the same position or regains the line of voyage whichever shorter distance for a port where the vessel is originally destined for and voyage resumed therefrom all expenses incurred, including bunkers consumed during such period of suspension shall be for Owners' account

It is expressly agreed that if the vessel resumes her voyage from a point closer to her original destination then any time and bunkers saved shall be credited to the Owners.

The Charterers may in their option add any off-hire period(s) to the time charter period.

### Clause 47. Saving Life Refugee

Owners shall have the liberty to deviate for the purpose of saving life at sea and landing the person saved. But in case found the person is refugee, any time hereby lost and extra expenses to be shared equally with parties involved in this Charter chain, i.e. Head Owners/Korea Line.

### Clause 48. Winch Breakdown

In the event of breakdown of winch or winches by reason of disablement or insufficient power, the hire to be reduced pro rata for the period of such inefficiency in relation to the number of winch(es) available. Owners to pay in addition the cost of labour including stevedores stand-by cost either idle or additionally engaged, because of the breakdown, but only for the gang the breakdown incurred.

This does not exempt Owners from liability for the cost of hiring shore appliances, if required by Charterers, in accordance with clause 23. If shore appliances are hired by Owners, the hire of the vessel to be paid in full deducting actual time lost by breakdown. Charterers to discuss with Owners the cost of any shore gear prior Charterers hiring same.

4

## ADDITIONAL CLAUSES TO MV 'OCEAN PREFECT'
## CHARTER PARTY DATED 19^TH^ OCTOBER 2012

Should the final completion of the load/discharge be delayed when cargo is to be completed or remaining in only one hold due to breakdown of winch or winches at those hatches and if the deficiency is not rectified within three hours of occurrence, and then the entire vessel to be off-hired However, if the Owners at their option to provide a shore crane at their cost, then the time to count in full and vessel shall remain on hire

### Clause 49. Seizure Detention Arrest

Should the vessel be seized or detained or arrested or delayed by any authority during the currency of this Charter period, all time lost by this reason shall be treated off-hire until the time of her release unless such seizure or detention or arrest or delay is occasioned by any act or omission or default of Charterers or their agents, any extra expenses incurred by and/or during above seizure or detention or arrest or delay to be for Owners' account, unless caused by Charterers as above

### Clause 50. Requisition

Should the vessel be requisitioned by the government of the vessel's flag during the currency of this Charter, she shall be off-hire during the period of such requisition and any hire or other compensation paid by any government or governmental authority in respect of such requisition shall be for Owners' account However Charterers have the option of cancelling the balance period of this Charter, provided this requisitioning is of 30 continuous days or more

### Clause 51. Major War

If major war breaks out between any two or more of the following countries and provided same has a direct bearing on the non-fulfillment of this Charter Party

United Kingdom, U S A , Russia, People's Republic of China, Japan, South Korea and flag of the vessel directly affecting the performances of this charter both Owners and Charterers shall have the option of cancelling this charter whereupon Charterers shall redeliver the vessel to Owners if she has cargo on board, after discharging thereof at destination, or if debarred from reaching or entering it at a near open and safe port as directed by Charterers, or if she has no cargo on board, at a port at which she stays or if at sea at a near and safe port as directed by Charterers In all cases hire shall be paid until vessel's redelivery

### Clause 52. War Risk Insurance and Crew War Bonus

Basic war risk and crew war bonus to be for Owners' account In the event Charterers employ the vessel in a trade for which there is an additional war risk insurance premium Charterers to reimburse the Owners such additional premium based on vessel insured total value at that time but increase not to exceed what would have been quoted if vessel as covered with Lloyd's of London
Charterers to pay for such additional premium on receipt of Owners' invoice accompanied by original vouchers from underwriters
Any crew war bonus caused by the trade in which vessel is engaged to be for Charterers' account
Extra crew war bonus and war risk insurance in South American countries to be for Charterers account
Conwartime 1993 War Risk Clause to apply to this Charter Party



## ADDITIONAL CLAUSES TO MV 'OCEAN PREFECT'
## CHARTER PARTY DATED 19TH OCTOBER 2012

**Clause 53. Bill(s) of Lading Sign**

Charterers and/or their agents are hereby authorized by Owners to sign on Master's and/or Owners' behalf Bill of Lading as presented in conformity with Mate's Receipts without prejudice to this Charter Party, but Charterers to hold Owners' harmless and indemnify Owners against all consequences arising from Charterers signed Bill(s) of Lading.

**Clause 54. Applicable Clauses.**

New Jason Clause, New Both-to-Blame Collision Clause, and the Hague 1921 rules and Legislation's, Conwartime 1993 War Risk Clause, Chamber of Shipping Nuclear Clause, Clause Paramount, U.S.A., Clause Paramount, whenever applicable shall be deemed to be incorporated in this Charter Party and Bills of Lading issued hereunder.

**Clause 55. Nype Interclub Agreement**

Liabilities for cargo claims, including customs fines if imposed shall be borne by Owners/Charterers in accordance with the interclub New York produce exchange agreement of 1996 and any amendment thereto. The party having paid the claim shall submit to the other party supporting documents as soon as possible.

**Clause 56. Owners' P & I Club**

Owners confirm the vessel is fully covered for the duration of Charterers employment by "UK Club". Charterers confirm they will be entered with "West of England" for Charterers' liability insurance throughout this Charter Party.

**Clause 57. Steel Loading**

If Charterers wish to load steel coils then Owners confirm that coils may be loaded line for line in as many tiers as is necessary and dependant on the weight and dimensions of same but always within vessel's permissible tanktop strengths and in compliance with builders/class point stress limitations prescribed for coils and to Master's satisfaction with regard to stress, trim and stability requirements. Coils to be loaded and stowed in accordance with international standard loading procedures and in compliance with load/discharge port requirements. Above cargo to be adequately dunnaged and lashed to ensure safe stowage to Master's satisfaction.
Charterers to give prior notice of loading final steel products only in order for Owners to arrange cargo condition survey through their P&I Club with cost to be shared equally between Owners and Charterers.

Steel Loading (final products only)

In case of steel (final products only) loading Owners to appoint P&I surveyors for preloading condition survey which cost to be shared equally between Owners and Charterers.

In case charterers to load steel slabs, Charterers have option to apply vertical/block stowage in loading subject to vessel's strength/trim/stability permitting and to Master's satisfaction. Charterers to provide adequate lashing/dunnage material at Charterers' own account. Lashing not to be done by crew and to be done under Master's supervision.



## ADDITIONAL CLAUSES TO MV 'OCEAN PREFECT' CHARTER PARTY DATED 19TH OCTOBER 2012

### Clause 58. Hatch Covers

Owners warrant that vessel's hatch covers are to be watertight throughout this Charter period and if hatch cover found defective, same to be rectified at Owners' time and expenses to Charterers' satisfaction.

### Clause 59. Vessel's Description

As per attached Medium Form Questionnaire

### Clause 60. Delay Due to Ownership

In the event that the vessel is delayed or rendered inoperative by strikes labour stoppage or any other difficulties due to ownership, lack of health certificates of officers/crew such time lost to be considered as off-hire

### Clause 61. Return Insurance

Charterers to have the benefit of any return insurance premium receivable by Owners from their underwriters, as and when received from the underwriters, by reason of the vessel being in port for a minimum period of 30 days, provided the vessel is on hire during the same period.

### Clause 62. Grab Discharge

Owners warrant that vessel's holds are clear of any fittings/super-structures such as cardeck, curtain plates. Owners warrant that vessel is suitable for grab discharge as far as a vessel of her configuration can be, furthermore vessel is suitable for bulldozer operation provided with rubber wheels and within vessel's tank top strengths

### Clause 63. WWF/ITF

Owners guarantee that vessel fitted with Aussie/New Zealand trading in accordance with WWF requirement and/or local port authority/regulatory bodies.

### Clause 64. Bimco Standard ISM Clause

From the date of coming into force of the International Safety Management (ISM) Code in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the vessel and the 'the company' (as defined by the ISM Code) shall comply with the requirements of the ISM Code. Upon request the Owners shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers

Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by failure on the part of the Owners or; 'the company' to comply with the ISM Code shall be for Owners' account

### Clause 65. ISPS Clause

(A) 1)From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply



**ADDITIONAL CLAUSES TO MV 'OCEAN PREFECT'**
**CHARTER PARTY DATED 19TH OCTOBER 2012**

with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).

ii)Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

(B) i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and, where sub-letting is permitted under the terms of this Charter Party, shall ensure that the contact details of all sub-Charterers are likewise provided to the CSO and the SSO/Master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision: "The Charterers shall provide the Owners with their full style contact details and, where subletting is permitted under the terms of the charter party, shall ensure that the contact details of all Sub-Charterers are likewise provided to the Owners".

ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss. caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account.

(C) Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(D) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

### Clause 66. Consecutive Off-Hire

If the vessel is placed off-hire for more than 22 consecutive days other than for dry-docking purpose, Charterers have the right to cancel the balance period of this charter upon completion of the concerned voyage provided no cargo on board

### Clause 67. Bimco Double Banking Clause

a) The Charterers shall have the right, where and when it is customary and safe for vessels of similar size and type to do so, to order the vessel to do, lie or remain alongside another vessel or vessels of any size or description whatsoever or to order such vessels to come and remain alongside at such safe dock, wharf, anchorage or other place for transhipment, loading or discharging of cargo and/or bunkering.

b) The Charterers shall pay for and provide such assistance and equipment as may be required to enable any of the operations mentioned in this clause safely to be completed and shall give the Owners such advance notice as they reasonably can of the details of any such operations.



## ADDITIONAL CLAUSES TO MV 'OCEAN PREFECT'
## CHARTER PARTY DATED 19TH OCTOBER 2012

c) Without prejudice to the generality of the Charterers' rights under (a) and (b), if is expressly agreed that the Master shall have the right to refuse to allow the vessel to perform as provided in (a) and (b) if in his reasonable opinion it is not safe so to do.

d) The Owners shall be entitled to insure any deductible under the vessel's hull policy and the Charterers shall reimburse the Owners any additional premium(s) required by the vessel's Underwriters and/or the cost of insuring any deductible under the vessel's hull policy.

e) The Charterers shall further indemnify the Owners for any costs, damage and liabilities resulting from such operation. The vessel shall remain on hire for any time lost including periods for repairs as a result of such operation.

### Clause 68. Padeyes

Charterers have option to weld padeyes on deck/hold (at points approved by Master who will consider issues of safety/vessel's paint work) at Charterers' time/expenses and same to be removed prior to redelivery but Charterers have option to redelivery vessel without removing padeyes paying USD 5 (five) per padeye.

It is agreed that all such padeyes are not to be welded over bunker tanks.

### Clause 69. Bank Details

Danske Bank
Holmens Kanal 2-12
Copenhagen
Denmark
Swift Code: DABADKKK
Account No.: DK9230003001881485
Beneficiary: Lauritzen Bulkers A/S


### Clause 70. Hold Condition Clause

Hold condition on delivery

Vessel's holds on arrival first load port to be clean swept and washed down by fresh water and dried up so as to receive Charterers' intended cargoes in all respects, free of salt, loose rust scale and previous cargo residue to the Charterers' satisfaction.

If the vessel fails to pass any hold inspection on the maiden voyage of this Charter Party, the vessel should be placed off-hire from the time of rejection until the vessel passes the same inspection again and any actual expenses incurred directly thereby to be for Owners' account. In case vessel partly passes cleanliness inspection and Charterers start cargo operations then vessel to be offhire pro rata in relation to the holds not available to Charterers.

### Clause 71. Letter of Indemnity Clause

Owners to allow Charterers to discharge cargoes without presentation of original Bill(s) of Lading by providing with Letter of Indemnity in accordance with Owners P and I Club form and wording before discharging. Letter of Indemnity to be signed by Charterers only.



## ADDITIONAL CLAUSES TO MV 'OCEAN PREFECT'
## CHARTER PARTY DATED 19TH OCTOBER 2012

### Clause 72. Grain Fitting

Vessel shall be in all respect fitted for grain loading and has necessary certificate for grain loading in accordance with the requirements of SOLAS'

### Clause 73. Arbitration

This Charter Party shall be governed by and construed in accordance with English law and any dispute arising out of this Charter Party shall be referred to arbitration in London in accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force. Unless the parties agree upon a sole arbitrator, one arbitrator shall be appointed by each party and the arbitrators so appointed shall appoint a third arbitrator, the decision of the three man tribunal thus constituted or any two of them, shall be final. On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint their arbitrator within fourteen days, failing which the decision of the single arbitrator appointed shall be final. For disputes where the total amount claimed by either party, exclusive of interest and legal costs, does not exceed the sum of USD 50,000 (or its equivalent in other currencies) the arbitration shall be conducted in accordance with the Small Claim Procedure of the London Maritime Arbitrators Association

### Clause 74. Delivery/Redelivery

For the purpose of computing hire payments, time for delivery/redelivery shall be adjusted to GMT

### Clause 75. Itinerary of Voyage

Charterers shall inform Owners itinerary of each voyage and agents at calling ports as soon as available and also notify Owners immediately of unforeseen delays

### Clause 76. Trading Exclusions

Trading always within Institute Warranty Limits and always excluding the following countries

Israel, Turkish occupied Cyprus, Lebanon, Albania, Cuba, Iraq but if U N sanction free, the same to be allowed and Charterers to strictly comply with U N/U S A/ International Regulations' Procedure/Documentation at their time and expenses, North Korea- but U N/U S A approved cargo allowed. CIS Pacific Somalia Kampuchea Haiti, Eritrea Sierra Leone Sea of Azov excluded in winter conditions, and all war risk/like areas(where additional war risk premiums apply)
Vessel not to trade directly between China and Taiwan

Trading of vessel always to be in accordance and compliance with U N /U S A rules, regulations and procedures

Charterers are entitled to trade to Yemen and Sri Lanka on the following condition

Notwithstanding the Interclub agreement or any other provision which may be contained in the charter party to the contrary, all cargo claims which may occur during discharge at Yemen and/or Sri Lanka including possible claims for shortage and which may be imposed to the vessel or her Owners to be for Charterers entire liability and responsibility Charterers to



## ADDITIONAL CLAUSES TO MV 'OCEAN PREFECT'
## CHARTER PARTY DATED 19TH OCTOBER 2012

deal with and defend same directly with the cargo interests/claimants without involving Owners or their P & I Club

When trading Lybia, any out of the ordinary documentation and/or procedural requirements including inter alia, possible translation of ship and/or cargo documents are undertaken by Charterers at their time, risk and expense

As long as St Petersburg is not considered by the ships underwriters as an additional premium area and will be considered by underwriters within allowed trading limit (IWL) Owners can agree to call St Petersburg  However if will remain considered out of IWI  or there are ice conditions or shall have to follow ice breakers there, Owners cannot call St Petersburg

Charterers shall have the privilege of breaking Institute Warranty Limits provided in ice free areas – vessel not to force ice nor to follow ice breaker- by giving due advance notice to Owners and seek Owners prior consent which shall not be unreasonably withheld  Charterers paying any extra Insurance premium thereby incurred, but in no case shall exceed the London scale  This extra insurance to be covered by owners with their hull underwriters and to be reimbursed by the Charterers against presentation of relevant supportive invoice

In any event Charterers not to have the right to trade to St Lawrence from 5 Dec/30 March

### Clause 77, Cargo Exclusions

Livestock, arms, ammunition, explosives, asphalt, pitch in bulk, ammonium nitrate, calcium carbide, ferro silicon, direct reduced iron lumps/pellets  acids, naphtha, tar  hides, bones, shavings, salt, saltpetre, copra, sunflowerseed expeller, fishmeal  scrap  motor blocks and turnings  metal boring and cuttings  creosoted goods  bulk borax, motor spirit, nuclear and radioactive waste/materials/goods and its products/by-products, petroleum and its products  charcoal, petroleum coke, bulk cement, cotton, h b i  d r i, calcium hypochloride  motor spirit, nitrate, ammonia  black powder  blasting caps, detonator caps, dynamite, tnt  logs oilcakes,bombs loaded and unloaded, meat bone meals tar or any of its products, all injurious/inflammable/dangerous goods/commodities as listed in latest IMO D G Code and or any subsequent amendments/ modifications thereof

Charterers are allowed to load max 18 dirty cargoes of following basket scrap/salt (but always to exclude motor blocks and turnings) /sulphur/petcoke/bulk cement/clinker in aggregate during the whole period of this charter party, but max 6 times of each cargo  Furthermore neither of same kind of cargoes to be consecutive and neither of these cargoes to be last under this Charter Party

### Soda Ash.
Soda ash allowed, however, owners are not responsible for the acceptability of the holds, if holds fail inspection, and all costs to be for charterers account with the vessel to remain online at all time

### Meals
Notwithstanding the above owners guarantee the vessel is suitable for and charterers are allowed to carry any kind of grain/grain products/agricultural products such as meals, pellets, and expellers (excluding sunflower seed expellers) in bulk but such cargoes, if shipped, to be always in compliance with be code of imo

### Cement / Cement Clinker :
Cement or cement clinker to be loaded, stowed, carried and discharging strictly in accordance with national/international regulations and IMO (IMCO) codes and recommendations, and Charterers warrant that the loading/discharging operations shall fully comply with the local and international regulations regarding the pollution and/or environmental control or similar restrictions by the local

MAERSK B O T
ASIA

## ADDITIONAL CLAUSES TO MV 'OCEAN PREFECT'
## CHARTER PARTY DATED 19TH OCTOBER 2012

authorities. Charterers are fully responsible for any fines, costs expenses, time and all consequences for not complying with the aforesaid regulations.

Vessel always to remain on-hire and Owners shall not be responsible for time/cost/expenses so lost/incurred if the holds do not pass the inspection by the surveyor for the next cargo after carriage of cement/cement clinker.

**Petcoke Loading:**
Owners hereby agree to load petcoke under this CP and Charterers to supply with adequate chemicals for cleaning holds also any extra fittings/materials/certifications required as per IMO/local regulations to be for Charterers' time/ account.

**Salt/Sulphur Clause:**
Vessel to load salt or sulphur and the following conditions to apply - Charterers are allowed to load salt or sulphur in their option under this Charter Party and in accordance to aforesaid limited occasions.

All holds to be limewashed or hold block applied in Owners option, and the extent of the lime or hold block coating to be to Master's satisfaction. Cost and application of lime washing or hold block to be for Charterers' account, time and responsibility and to be to Master's satisfaction.

Crew to carry lime coating for loading the cargoes, if required by the Charterers at Charterers' time, risk and expense. The Charterers to supply necessary lime and equipments enabling crew to carry out such work  Charterers to furthermore pay as crew bonus USD 600 per hold covering their lime application service rendered on Charterers behalf.

After discharge holds to be high pressure cleaned with fresh water, all limescale/hold bloc to be removed at Charterers' time and expense and holds to be restored by Charterers to original condition to Master's satisfaction.

Vessel not to be off-hired if fails subsequent hold inspection as a result of limescale/hold block remaining or result of smell lingering.

Salt/sulphur to be loaded/stowed/ and discharged strictly in accordance with applicable national/international regulations and IMO Codes and recommendations.

**Concentrates loading:**
For loading concentrates, the stowage to be within vessel's strength, all necessary separation if required to be properly erected up to Surveyor's and Master's satisfaction at Charterers' time and expense, cargo to be loaded, stowed, separated and trimmed and discharged etc. up to IMO and/or board trade regulations, at Master's request, Charterers to allow Owners to appoint P and I surveyor or independent surveyor to supervise loading, stowing, execution of separation etc, to surveyor's agreement and Master's satisfaction at Charterers' time and expense, before loading concentrates. Charterers to supply vessel with shipper's certificate of flow moistures' content evidencing cargo compliance with IMO regulations. After loading, cargo must be properly trimmed at Charterers' time and expense to Surveyors' and Master's satisfaction.

**Rice:**
Charterers may lift rice they being responsible for the passing of relevant surveys/hold inspection which are particularly strict for such commodity. Charterers also to ensure proper ventilation procedure are discussed and arranged together with Master.

12



## ADDITIONAL CLAUSES TO MV 'OCEAN PREFECT'
## CHARTER PARTY DATED 19TH OCTOBER 2012

**Steel/Woodpulp/Newsprint/Paper Products Loading Clause:**

If finish steels and/or wooldpulp and /or newsprint and/or other paper products are loaded, in order to minimize cargo claims Owners will appoint a P and I appointed surveyor to survey Cargo at load and discharge ports survey and cost to be for equally shared between Charterers /Owners All remarks will be inserted on Mate Receipts and Bills of Lading

All cargoes always to be loaded/stowed/carried and discharged in strict accordance with local/national and I M O  regulations, any extra fittings/equipment/etc Which are required to observe such regulations to be undertaken by Charterers at their time/expenses

**Scrap Protective Clause**

Charterers have liberty to carry scrap, whether it is full or part cargo during the entire period of this Charter on following condition

1  The scrap mentioned herein only limited to regular/normal scrap and/or HMS 1 & 2 or shredded non-oily scrap specifically excluding motor blocks and turnings and also metal borings and cuttings

2  The Charterers shall instruct the terminal operators or their servants to load the cargo, in accordance with where appropriate  IMO/local regulations, and in any event to Master's satisfaction

3  Charterers warrant that no ferrous metal borings, shavings, turnings cuttings, iron swarf or steel swarf nor any other material which could be categorized as dangerous cargo under the IMDG code  to be loaded on board

All loading to be to the Master's satisfaction and should the Master not be satisfied as to the safety of the cargo or the loading operation, then he shall be authorized to stop loading until the situation is corrected  Should the charterers consider the Master's request or actions to be unreasonable then an Independent surveyor, mutually acceptable to both parties  to be appointed and his decision on loading to be binding  Surveyor's expenses to be shared equally between owners and time charterers

The first layer of scrap not to be released until touching tanktop and not to be dumped and/or dropped during loading and or discharging  first layer of scrap to be evenly trimmed/stowed as to form cushioning always to satisfaction of master before loading balance cargo allowed  any stevedore damage caused during loading/discharging of this cargo to be promptly repaired to master's satisfaction prior sailing from loading/discharging port  Charterers to remain fully responsible and pay for stevedore damage so caused and the vessel to remain on hire at all times

4  Charterers undertake to supply on board at their expense, dunnages and or other materials that are necessary and reasonable (which Master consider necessary) to provide safe protection from damage by loading scrap

5  Charterers are allowed to use ship's crew to perform hold cleaning against paying US$800 per hold cleaned in addition of IHC if this cargo is the last one
All time used to be for Charterers account



## ADDITIONAL CLAUSES TO MV 'OCEAN PREFECT'
## CHARTER PARTY DATED 19TH OCTOBER 2012

**Clause 78  Documentation Clause**

1) Owners warrant that throughout the Currency of this charter they will provide the vessel with the following certificates

Certificate issued pursuant to section 1002 of the oil pollution act 1990 and section 107 of the comprehensive environmental response compensation and liability act 1980 as amended in accordance with part 108 of coast guard regulation 33 cfr

2) Owners warrant that they will keep the ship entered in an International Group P&I Club throughout the duration of the charter party, with cover to include the maximum coverage available from an International Group P&I Club with respect to pollution, currently US$ 1 billion, In case any port or country that the ship trades to during the course of this charter party creates further requirements with respect to financial security for pollution damage, then Owners will exercise due diligence to ensure that the ship fully complies with such regulations

3) Charterers warrant that the terms of this clause will be incorporated effectively into any Bill(s) of Lading issued pursuant to this charter

**Clause 79  P&C**

Private confidential with no report from all parties involved in negotiation and eventual fixture

**Clause 80. Taxes**

All tax(es), dues and charge(s) on cargo and or freight arising out of cargoes carried or port(s) visited under this Charter Party to be for Charterers account

**Clause 81  Asian Gypsy Moth Clause**

Owners warrant that on delivery under this charter vessel meets all agriculture Canada plant protection division and U S D A plant protection and quarantine office regulations  Furthermore Owners warrant that on delivery under this charter vessel is free of any Asian gypsy moth egg or larvae or any form of Asian gypsy moth life

If the vessel on delivery under this charter is not clean and allowed to enter the port and has not presented a fully valid notice of readiness with in the Charterers contracted period due to Asian gypsy moth infestation, Charterers to have the right to off hire vessel for time actually lost

**Clause 82  ITF**

Owners guarantee that valid I T F or equivalent agreement for the vessel covering any port or place is available on board for the whole period of this Charter Party

**Clause 83  Deck Cargo**

Charterers are permitted to load on the vessels deck and hatch covers always provided that the permissible loads on the deck/hatch covers are not exceed, that the stability of the vessel permits and that such cargo does not affect the seaworthiness of safe navigability of the vessel in any manner

Any extra fitting required for deck or hatch cargo are to be provided and paid for by the Charterers who are to load, stow, dunnage, lash and secure, unlash, tally such cargo in their time and expense always to the entire satisfaction of the Master  The vessel is not to be held responsible for any loss of or damage to the cargo carried on deck  In the event that cargo is shipped on deck during this



## ADDITIONAL CLAUSES TO MV 'OCEAN PREFECT'
## CHARTER PARTY DATED 19TH OCTOBER 2012

charter, Charterers are to ensure that separate Bills of Lading are issued covering such cargo that those Bills of Lading are claused as follows:

"Shipped on deck at Charterers'/Shippers' and Receivers' sale risk, expenses and responsibility, without liability on the part of the vessel, or her Owners for any loss, damage, expenses or delay howsoever caused." Or voyages to and from ports in the U.S.A. - "carried on deck at Shippers' risks as to perils inherent in such carriage, but in all other respects subject to the provisions of the United States carriage of goods by Sea Act 1936. "

### Clause 84. Weather Routing Clause

The Charterers may supply an independent weather bureau advice to the master, during voyages specified by the Charterers and the master shall comply with the reporting procedure of the weather bureau, however, the master remains responsible for the safe navigation and choice of route. Alternatively Charterers have the option to instruct the master to report daily to a weather bureau during the execution of sea voyages. The weather bureau will subsequently produce a performance analysis report. Evidence of weather conditions shall be taken form the vessel's deck log and independent weather bureau's reports. In the event of discrepancy between the deck logs and the independent weather bureau's reports, the independent weather bureau's report shall be final and binding on both parties unless Owners can produce weather date and voyage performance analysis from another independent weather bureau, or if settled amicably

Performance assessment/calculations always to be done in accordance with English law.

### Clause 85. Breaking IWL

Charterers have the option of breaking 'IWL' with Owners' prior permission which not to be unreasonably withheld against paying additional insurance premium on presentation of vouchers but the amount not to exceed charged by underwriters of Lloyd 's London.

### Clause 86. Communication Fee

Charterers to pay USD1,300 per month or pro-rata for covering all cable, communications, victualling, representation and entertainment but no spirits and CIGS to be provided.

### Clause 87. Dry Dock Clause

Vessel will dry dock and undergo special survey as prescribed by class during the Charter Party. Owners to give Charterers 60 days notice of intended drydock. The Owners and Charterers to coordinate timeously in an endeavor to respect Charterers' schedule and also Owners' preferred dry dock location. Charterers have the option to include or exclude the dry dock period from the whole charter period.

The vessel has passed SS in January 2007.

### Clause 88. Bottom Cleaning

If the vessel is in a port for more than 28 days or idle at a safe anchorage for more than 28 days, Owners to appoint divers to check hull bottom and report with signature to Charterers. If Charterers need hull bottom cleaning at their discretion, Charterers are to bear the cost of hull bottom cleaning. Owners shall endeavour to carry out bottom cleaning at next available port where such facilities are available. Vessel is to remain on-hire during the cleaning operation.



## ADDITIONAL CLAUSES TO MV 'OCEAN PREFECT' CHARTER PARTY DATED 19TH OCTOBER 2012

However, when practical, the bottom cleaning should take place at the port where the ship has been laying for more than 28 days, but if it is not practical to do so and cleaning has to take place at another location Charterers have no right to lodge a speed or bunker claim against the owners during the period the vessel is in a fouled condition and enroute to the port identified where the hull cleaning is to be undertaken

### Clause 89  Conwartime 2004

War Risks Clause for Time Charters, 2004 (Code Name  CONWARTIME 2004)

(a) For the purpose of this Clause, the words

(i) "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master, and

(ii) "War Risks" shall include any actual, threatened or reported war, act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, laying of mines, acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel

(b) The Vessel unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through any port, place, area or zone (whether of land or sea), or any waterway or canal where it appears that the Vessel her cargo, crew or other persons on board the Vessel in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks Should the Vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it

(c) The Vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever  or to proceed to an area where she shall be subject, or is likely to be subject to a belligerent's right of search and/or confiscation

(d) (i) The Owners may effect war risks insurance in respect of the Hull and Machinery of the Vessel and their other interests (including, but not limited to, loss of earnings and detention  the crew and their protection and Indemnity Risks), and the premiums and/or calls therefore shall be for their account

(ii) If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers  orders, the Vessel is within, or is due to enter and remain within, or pass through any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then the actual premiums and/or calls paid shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due, or upon redelivery, whichever occurs first

(e) If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then the actual bonus or additional wages paid shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due, or upon redelivery, whichever occurs first

16



## ADDITIONAL CLAUSES TO MV 'OCEAN PREFECT' CHARTER PARTY DATED 19TH OCTOBER 2012

(f) The Vessel shall have liberty:-
(i) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government, body or group whatsoever acting with the power to compel compliance with their orders or directions;
(ii) to comply with the order, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;
(iii) to comply with the terms of any resolution of the Security Council of the United Nations, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;
(iv) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;
(v) to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

(g) If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging ports, or anyone or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alterative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

(h) If in compliance with any of the provisions of sub-clauses (b) to (g) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfillment of this Charter Party.

### Clause 90. Bulk Carrier Safety Clause

(A) The Charterers shall instruct the terminal operators or their representatives to co-operate with the Master in completing the IMO ship/shore safety checklist and shall arrange all cargo operations strictly in accordance with the guidelines set out therein.

(B) In addition to the above and notwithstanding any provision in this Charter Party in respect of loading/discharging rates, the Charterers shall instruct the terminal operators to load/discharge the vessel in accordance with the loading/discharging plan, which shall be approved by the Master with due regard to the vessel's draught, trim, stability, stress or any other factor which may affect the safety of the vessel.

(C) At any time during cargo operations the Master may, if he deems it necessary for reasons of safety of the vessel, instruct the terminal operators or their representatives to slow down or stop the loading or discharging.

(D) Compliance with the provisions of this clause shall not affect the counting of hire.

### Clause 91. U.S. Tax Reform 1986 Clause

Any U.S. gross transportation tax as enacted by the United States Public law 99-514, (also referred to as the U.S. tax reform act of 1986), including later changes or amendments, levied on income attributable to transportation under this Charter Party which begins or ends in the United States,

17

## ADDITIONAL CLAUSES TO MV 'OCEAN PREFECT'
## CHARTER PARTY DATED 19TH OCTOBER 2012

and which income under the laws of the United States is treated as U S source transportation gross income, shall be reimbursed by the Charterers

### Clause 92. U.S. Trade - Unique Bill of Lading Identifier Clause

The Charterers warrant that each transport document accompanying a shipment of cargo destined to a port or place in the United States of America shall have been endorsed with unique Bill of Lading identifier as required by the U S customs regulations (19 CFR part 4 section 4 7 A) including subsequent changes, amendments or modifications thereto not later than the first port of call

Non-compliance with the provisions of this clause shall amount to breach of warranty for the consequences of which the Charterers shall be liable and shall hold the Owners harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them Furthermore, all time lost and all expenses incurred including fines as a result of the Charterers' breach of the provisions of this clause shall be for the Charterers' account

### US Customs Advance Notification/AMS Clause for Time Charter Parties

A) If the vessel loads or carries cargo destined for the US or passing through US ports in transit, the Charterers shall comply with the current US Customs regulations (19 CFR 4 7) or any subsequent amendments thereto and shall undertake the role of carrier for the purposes of such regulations and shall in their own name, time and expense
i) Have in place a SCAC (Standard Carrier Alpha Code)
ii) Have in place an ICB (International Carrier Bond)
iii) Provide the Owners with a timely confirmation of i) and ii) above and
iv) Submit a cargo declaration by AMS (Automated Manifest System) to the US Customs and provide the Owners at the same time with a copy thereof

B) The Charterers assume liability for and shall indemnify defend and hold harmless the Owners against any loss and/or damage whatsoever (including consequential loss and or damage) and/ or any expenses fines penalties and all other claims of whatsoever nature, including but not limited to legal costs, arising from the Charterers' failure to comply with any of the provisions of sub clause (a) Should such failure result in any delay then, notwithstanding any provision in t his Charter Party to the contrary, the Vessel shall remain on hire

C) If the Charterers' ICB is used to meet any penalties, duties, taxes or other charges which are solely the responsibility of the Owners, the Owners shall promptly reimburse the Charterers for those amounts

D) The assumption of the role of carrier by the Charterers pursuant to this Clause and for the purpose of the US Customs Regulations (19 CFR 4 7) shall be without prejudice to the identity of carrier under any Bill of Lading, other contract, law or regulation

### Clause 93 Hamburg Rules Charter Party Clause

Neither the Charterers nor their agents shall permit the issue of any Bill of Lading Waybill or other document evidencing a contract of carriage (whether or not signed on behalf of the Owner or on the Charterers' behalf or on behalf of any sub-Charterers) incorporating where not compulsorily applicable the Hamburg Rules or any other legislation giving effect to the Hamburg Rules or any other legislation imposing liabilities in excess of Hague or Hague/Visby Rules Charterers shall indemnify the Owners against any liability, loss or damage which may result from any breach of the foregoing provisions of this clause

18



## ADDITIONAL CLAUSES TO MV 'OCEAN PREFECT'
## CHARTER PARTY DATED 19TH OCTOBER 2012

### Clause 94. U.S Anti Drug Abuse Act 1986 Clause for Time Charters

(A) In pursuance of the provisions of the U S Anti Drug Abuse Act 1986, or any re-enactment thereof, the Charterers warrant to exercise the highest degree of care and diligence in preventing unmanifested narcotic / drugs and marijuana to be loaded or concealed on board the vessel
Non-compliance with the provisions of this clause shall amount to breach of Warranty for the consequences of which the Charterers shall be liable and shall hold the Owners, the master and the crew of the vessel harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them individually or jointly
Furthermore, all time lost and all expenses incurred, including fines, as a result of the Charterers' breach of the provisions of this clause shall be for the Charterers' account and the vessel shall remain on hire Should the vessel be arrested as a result of the Charterers' non-compliance with the provisions of this clause, the Charterers shall at their expense take all reasonable steps to secure that within a reasonable time the vessel is released and at their expense put up bail to secure release of the vessel
The Owners shall remain responsible for all time lost and all expenses incurred including fines in the event that unmanifested narcotic drugs and marijuana are found in the possession or effects of the vessel's personnel
(B) In pursuance of the provisions of sub clause (a) above, the Owners and the Charterers warrant that they shall both become signatories to the sea carrier initiative agreement on signing this Charter Party or on delivery of the vessel under this Charter, whichever is the earlier and will so remain during the currency of the Charter

### Clause 95  U.S. Security Clause for Time Charters

If the vessel calls in the Unite States, including any U S territory, the following provisions shall apply with respect to any applicable security regulations or measures Notwithstanding anything else contained in this Charter Party all costs or expenses arising out of or related to security regulations or measures required by any U S authority including, but not limited to security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account unless such costs or expenses result solely from the Owners' negligence

### Clause 96. Through BoL

It is expressly agreed that during the currency of this Charter Party no Through Bills of Lading are to be issued

### Clause 97. Cargo Separation

Separations between cargoes other than natural, to be for Charterers' account/risk and expense

### Clause 98. Safe Stowage and Trimming

Charterers are to leave the vessel in safe and seaworthy trim and with cargo on board safely stowed, dunnaged and secured to the Master's satisfaction for all shifting between berths and all passages between ports under this Charter in their time and at their expenses

### Clause 99. Liberty to Sell

Owners are at liberty to sell vessel during the currency of this Charter Party with charter attached without change  Charterers to be duly advised of Owners' intentions in this regard



## ADDITIONAL CLAUSES TO MV 'OCEAN PREFECT'
## CHARTER PARTY DATED 19TH OCTOBER 2012

However the new Owners in this case to be subject to Charterers' approval which not to be unreasonably withheld

### Clause 100  New Jason Clause

In the event of accident  danger, damage, or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the carrier is not responsible, by statute, contract, or otherwise, the goods, shippers, consignees  or owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers  Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery

### Clause 101  New Both To Blame Collision Clause

If the liability for any collision in which the vessel is involved while performing this charter party fails to be determined in accordance with the laws of the united states of America  the following clause shall apply

### Both To Blame Collision Clause

If the ship comes into collision with another ship as a result of the negligence of the other ship and any act  neglect or default of the master, mariner, pilot or the servants of the carrier in the navigation or in the management of the vessel, the owners of the cargo carried hereunder will indemnify the carrier against all loss or liability to the other or non carrying ship or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non carrying ship or her owners to the owners of said cargo and set off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying vessel or carrier

The foregoing provisions shall also apply where the owners, operators or those in charge of any ship or ships or objects other than  or in additional to, the colliding ships or objects are at fault in respect to a collision or contract

### Clause 102  Bimco Bunker Fuel Sulphur Content Clause for Time Charter Parties 2005

(a)Without prejudice to anything else contained in this Charter Party, the Charterers shall supply fuels of such specifications and grades to permit the Vessel, at all times, to comply with the maximum sulphur content requirements of any emission control zone when the Vessel is ordered to trade within that zone

The Charterers also warrant that any bunker suppliers  bunker craft operators and bunker surveyors used by the Charterers to supply such fuels shall comply with Regulations 14 and 18 of MARPOL Annex VI, including the Guidelines in respect of sampling and the provision of bunker delivery notes

The Charterers shall indemnify, defend and hold harmless the Owners in respect of any loss, liability, delay, fines  costs or expenses arising or resulting from the Charterers' failure to comply with this Sub-clause (a)



## ADDITIONAL CLAUSES TO MV 'OCEAN PREFECT'
## CHARTER PARTY DATED 19TH OCTOBER 2012

(b) Provided always that the Charterers have fulfilled their obligations in respect of the supply of fuels in accordance with Sub-clause (a), the Owners warrant that:

(i) the Vessel shall comply with Regulations 14 and 18 of MARPOL Annex VI and with the requirements of any emission control zone; and
(ii) the Vessel shall be able to consume fuels of the required sulphur content when ordered by the Charterers to trade within any such zone.

Subject to having supplied the Vessel with fuels in accordance with Sub-clause (a), the Charterers shall not otherwise be liable for any loss, delay, fines, costs or expenses arising or resulting from the Vessel's failure to comply with Regulations 14 and 18 of MARPOL Annex VI.

(c) For the purpose of this Clause, "emission control zone" shall mean zones as stipulated in MARPOL Annex VI and/or zones regulated by regional and/or national authorities such as, but not limited to, the EU and the US Environmental Protection Agency.

### Clause 103. Bimco Stowaways Clause for Time Charters

(a) (i) The Charterers warrant to exercise due care and diligence in preventing stowaways in gaining access to the Vessel by means of secreting away in the prepacked cases/drums and/or containers shipped by the Charterers.

(ii) If, despite the exercise of due care and diligence by the Charterers, stowaways have gained access to the Vessel by means of secreting away in the prepacked cases/drums and/or containers shipped by the Charterers, this shall amount to breach of charter for the consequences of which the Charterers shall be liable and shall hold the Owners harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them Furthermore, all time lost and all expenses whatsoever and howsoever incurred, including fines, shall be for the Charterers' account and the Vessel shall remain on hire
(iii) Should the Vessel be arrested as a result of the Charterers' breach of charter according to sub-clause (a)(ii) above, the Charterers shall take all reasonable steps to secure that, within a reasonable time, the Vessel is released and at their expense put up bail to secure release of the Vessel.

(b) (i) If, despite the exercise of due care and diligence by the Owners, stowaways have gained access to the Vessel by means other than secreting away in the prepacked cases/drums and/or containers shipped by the Charterers, all time lost and all expenses whatsoever and howsoever incurred, including fines, shall be for the Owners' account and the Vessel shall be off hire,

(ii) Should the Vessel be attested as a result of stowaways having gained access to the Vessel by means other than secreting away in the prepacked cases/drums and/or containers shipped by the Charterers, the Owners shall take all reasonable steps to secure that, within a reasonable time, the Vessel is released and at their expense put up bail to secure release of the Vessel.

** End **

21



 **Lauritzen Bulkers**

# MEDIUM FORM QUESTIONNAIRE

| | |
|---|---|
| Date updated | okt 18 2012 |
| Vessel name (IMO number) | Ocean Prefect (IMO 9249257) |
| Ship Type | Grabfitted bulkcarrier |
| Class | Lloyds Register |
| Flag | United Kingdom |
| Year Built / Yard | 2003 Oshima Shipyard, Japan |
| Communications | Call sign MLAZ5 |
| | Telex 423273110 |
| | Fax 870 783165714 |
| | Phone 870 773163354 |
| | Email ocean prefect@gtships.com |

| Loadlines | Dwat (mt) | Draft (m) | TPC |
|---|---|---|---|
| Summer Salt Water | 53,035 00 | 12 16 | 54 73 |
| Winter Salt Water | 51,652 00 | 11 91 | 54 66 |
| Tropical Salt Water | 54,421 00 | 12 42 | 54 80 |

| Cargo capacities | Grain (Cubic Meters) | Bale (Cubic Meters) |
|---|---|---|
| No 1 | 10,845 00 | 10,683 00 |
| No 2 | 14,507 00 | 14,226 00 |
| No 3 | 13 621 00 | 13,337 00 |
| No 4 | 14 424 00 | 14,151 00 |
| No 5 | 13 019 00 | 12,898 00 |
| Total | 66 416 00 | 65,295 00 |

| | |
|---|---|
| Holds/Hatches | 5/5 |
| Hatch cover type | Folding type (Nakata/Kvaerner) |
| Hatch dimensions | Hatch #1  16 74x18 60m |
| | Hatch #2  #4  21 39x18 60m |
| | Hatch #3  18 60x18 60m |
| | Hatch #5  22 32x16 60m |
| Cranes number/capacity/type | 4 x 30 00 MT / 4 x Make- IHI Japan, Type- H300190-260 |
| Grabs number/capacity/type | 4 x 12 5 CBM / Single Rope Grab type EGF  EGF  24 0-1 15-12500 |
| | NOTE  Grabs not to be used unless specific agreement has been made with owners |

| Speed and Consumption | |
|---|---|
| At sea laden condition | Abt  13 50 kts on abt 29 00 mt IFO RMG380 and 1 60 mt MGO DMA max 0 10% sulphur |
| At sea ballast condition | Abt  14 50 kts on abt 29 00 mt IFO RMG380 and 1 60 mt MGO DMA max 0 10% sulphur |
| | Under good weather conditions up to Beaufort 4 and Douglas Sea State 3 |
| In port when idle | mt IFO RMG380 and 1 60 mt MGO DMA max 0 10% sulphur |
| In port when working | 1 20 mt IFO RMG380 and 3 20 mt MGO DMA max 0 10% sulphur |
| Vessel is allowed to consume MGO (max 0 10% sulphur) when starting/stopping and maneuvering in narrow/shallow water | Yes |
| | In EU ports  vessel must burn MGO (max 0 10% sulphur) instead of MDO and IFO - idle and working |
| | Bunkers on board always to comply with ISO standard 8217 2005 or latest revision/amendments |
| Loa/Beam | 188 50 m / 32 26 m |
| International GT/NT | 29 323 00 / 17,592 00 |
| Panama Canal NT | 24,347 00 |
| Suez Canal GT/NT | 30,507 03 / 28,158 97 |
| Bunker tank capacities | 1,835 3 CBM (IFO RMG380) / 176 3 CBM (MGO DMA max 0 10% sulphur) (always to be confirmed by master) |
| Constants | 200 00 mt excl  fresh water (always to be confirmed by master) |

| Tank Strengths | Tank Top | Deck | Hatch Cover |
|---|---|---|---|
| | Hold #1  22 70 MT/sqm | 2 43 MT/sqm | 1 75 MT/sqm |
| | Hold #2  #4  15 00 MT/sqm | | |
| | Hold #3  25 80 MT/sqm | | |
| | Hold #5  21 70 MT/sqm | | |

| Other fittings | | | |
|---|---|---|---|
| Logs fitted | No | | |
| Cement holes | 2, 93 cm - Each, On top of FWD &amp  AFT pontoons | | |
| Logs stanchions/sockets | | | |
| Electrical ventilation | No | | |
| Grain fitted | N/A | | |
| Are holds CO2 fitted | No | | |
| Australian hold ladder | Yes | | |
| Strenghened for heavy cargo | Yes | Holds left empty | No 3 may be left empty for stability purpose |

All information about and believed to be correct

Lauritzen Bulkers A/S   28 Sankt Annae Plads   P O  Box 2147   1291 Copenhagen K   Denmark   Phone  +45 3396 8000

 SHIPBROKERS  MAERSK BROKER ASIA LIMITED  HONG KONG

**EXHIBIT 2**

**UK P&I CLUB**

The Managers
Thomas Miller P&I (Europe) Ltd
90 Fenchurch Street
London
EC3M 4ST
T +44 (0)20 7283 4646
F +44 (0)20 7549 4243
E ukpandi@thomasmiller com
www.ukpandi com

To the Owners of the below-captioned cargo and/or Bills
of Lading holders and/or their cargo insurers Ping An
Property & Casualty Insurance Company of China Ltd.
including but not limited to AHCOF International
Development Co. Ltd; Shandong Kerui Petroleum
Equipment Co., Ltd; PDVSA Petrolero/Bariven/PDVSA
Servicios Petroleros, S.A. and Ping An Property &
Casualty Insurance Company of China Ltd. ('the Cargo Interests')

Our Ref. JEL/2012/007930
8th March 2013

Dear Sirs,

| | |
|---|---|
| **Vessel:** | **MV Ocean Prefect** |
| **Cargo:** | Truck-Mounted Rigs with ancillary equipment per attached invoices nos AW18T120601A-04, AW18T120601A-05, AW18T120601A-06, AW18T120601A-03, AW18T120601A-02, KR12445 |
| **Bills of Lading:** | OPSHGT301, OPSHGT302, OPSHGT303,OPTJGT210, OPTJGT211 OPTJGT205 |
| **Claim:** | Loss of and/or damage to cargo ex MV Ocean Prefect |

IN CONSIDERATION of, and upon condition that the Cargo Interests take all necessary steps forthwith to release the MV Nairobi and MV Ocean Prefect from arrest and refrain from re-arresting or attaching or otherwise detaining the said vessels or any other vessel or property in the same or associated ownership, management or control for the purpose of obtaining security and/or enforcing any award or judgment in respect of the above Claim, WE HEREBY undertake to pay to the Cargo Interests on demand such sum as may be found and adjudged to be due and payable to the Cargo Interests by the Owners of M.V OCEAN PREFECT (Lomar Charters Limited) by final award or judgment of a competent or tribunal or, if appeals are made, after all appeals, or as may be agreed to be payable to the Cargo Interests in respect of the Claim,

UK P&I CLUB
IS MANAGED
BY **THOMAS MILLER**



The United Kingdom Mutual Steam Ship Assurance Association (Europe) Limited  Registered in England No 22215
Thomas Miller P&I (Europe) Ltd  Registered in England No  2920367  Registered offices as above

provided always that our liability hereunder shall not exceed the sum of USD 20,000,000 (United States Dollars twenty million) to the exclusion of any other currency, plus interest and costs.

And in consideration of the aforesaid:

1. We warrant that the M.V. OCEAN PREFECT was not bareboat chartered at the material time and confirm that the carriers under the above Bills of Lading are Lomar Charters Limited of England.

2. It is hereby agreed by the parties hereto that, in the event that the amount of the Claim is considered to be less than USD20 million as jointly determined by two competent, and professional surveyors from either England or the USA each appointed by Owners and Cargo Interests respectively, this Letter of Undertaking shall be exchanged with a new Letter of Undertaking in the same terms except for the amount.

3. We warrant that we have received irrevocable authority from the Owners of MV OCEAN PREFECT, Lomar Charters Limited, to give this Letter of Undertaking in these terms including the above warranties.

4. This Letter of Undertaking is given without prejudice to all existing rights and defences which may be available to Owners., The parties hereto further irrevocably agree that the issue of limitation of Owners' liability for the Claims shall be determined in accordance with Venezuelan law.

5. This Letter of Undertaking shall become operative upon receipt by us from PDVSA of a copy of their written instructions as sent to their lawyers in both Venezuela and Ivory Coast to release MV "NAIROBI" and MV "OCEAN PREFECT" from arrest immediately, whereupon our Letter of Undertaking dated 7th March 2013 will be null and void and of no effect.

This Letter of Undertaking shall be governed by and construed in accordance with Venezuelan law and we agree to submit to the exclusive jurisdiction of the Venezuelan Courts for the purpose of any process for the enforcement hereof. We further undertake to appoint lawyers in Venezuela to accept service of any proceedings to enforce this Letter of Undertaking and confirm our registered address is 90 Fenchurch Street, London EC3M 4ST.

Yours sincerely,

Jeffrey Lock
Senior Claims Director
for Thomas Miller P&I (Europe) Ltd,
Managers
For and on behalf of The United Kingdom Mutual Steam Ship
Assurance Association (Europe) Limited

**EXHIBIT 3**

West of England  →

To   Lomar Charters Limited
     c/o Sach Solicitors
     Chanray House
     232 238 Bishopsgate
     London
     EC2M 4QD

4 June 2013

Dear Sirs

### Letter of Undertaking

| | |
|---|---|
| **Ship** | m v OCEAN PREFECT |
| **Voyage** | Voyage from Chinese load ports to Venezuelan discharge ports |
| **Cargo** | General cargo including inter alia (i) drilling rigs and spare parts (ii) drilling equipment and spare parts and (iii) steel pipes |
| **Bills of Lading** | All bills of lading issued in respect of the Cargo carried on board the Ship on the subject Voyage |
| **Incident** | Damage to Cargo carried on board the Ship |
| **Charterparty** | Charterparty with additional clauses on NYPE form 1946 dated 11 January 2007 as amended and extended from 27 May 2012 by addenda thereto |
| **Charterparty law and Jurisdiction provision** | English law LMAA arbitration see Charterparty clauses 17 and 73 |
| **Owners** | noted Charterers and/or owners of m/v Lomar Charters Limited, as owner Named in Charterparty |
| **Charterers** | Landbridge Bunkers A S |
| **Claims** | Any and all claims arising out of the Voyage and/or the Incident and/or arising under the Bills of Lading and/or the Charterparty and/or in relation to the Cargo including but not limited to claims relating to (i) the arrest of the Ship in Venezuela (ii) the arrest of the m/v NAIROBI in the Ivory Coast (iii) any delay and/or loss and/or damage to the Ship and/or Cargo and (iv) any liability whatsoever arising under or in relation to the Charterparty and/or the Bills of Lading whether such liability arises in contract tort bailment or otherwise |
| **Cargo Security** | The UK Club letter of undertaking dated 8 March 2013 issued on behalf of Owners in favour of the owners of the cargo defined therein and/or the holders of the bills of lading defined therein and/or their cargo insurers Ping An Property & Casualty Insurance Company of China Ltd including but not limited to AHCOF International Development Co Ltd Shandong Kerui Petroleum Equipment Co Ltd PDVSA Petroleo Bar ven and PDVSA Servicios Petoleros S A as appended as Append x 1 to this Letter of Undertaking |

The Shipowners Mutual P & I Association Luxembourg

Managers
Registered



In consideration of Owners (i) issuing the Cargo Security and (ii) refraining from arresting or attaching or taking any action whatsoever against any asset or property in the ownership or associated ownership or management of Charterers or any monies paid or payable to Charterers or its associated companies for the purposes of obtaining security for the Claims

WE HEREBY UNDERTAKE on behalf of the Charterers to pay to the Owners and/or their legal representatives within 28 days of receipt of written demand such sums as may be awarded to be due to Owners from Charterers in respect of the Claims and interest and costs thereon by a final and unappealable London Arbitration Award or as may be adjudged to be due to Owners from Charterers in respect of the Claims by the High Court of Justice on appeal therefrom after all appeal(s) have been exhausted or as may be agreed by way of amicable settlement

PROVIDED ALWAYS that our liability hereunder shall not exceed the sum of US$20 000 000 (United States Dollars Twenty Million) plus interest and costs

Owners shall have no right to seek additional security from Charterers save where they can establish that (i) they have issued additional security over and above the Cargo Security and (ii) the additional security so far claims for which Charterers cannot limit as against Owners under the Convention on Limitation of Liability for Maritime Claims 1976 as amended by the 1996 Protocol thereto

AND PROVIDED FURTHER that this Undertaking is given without prejudice to any of the rights and defences the existing or future the Charterers may have at law or otherwise including but without limitation to limit their liability in respect of the Claims pursuant to the Convention on Limitation of Liability for Maritime Claims 1976 as amended by the 1996 Protocol thereto

This Undertaking shall be governed by and construed in accordance with English law and we agree to submit to the exclusive jurisdiction of the English High Court of Justice    London for the purpose of any process for the enforcement hereof

Yours faithfully

West of England Insurance Services
(Luxembourg) S A
As Managers

Director
Michael Keane

<u>EXHIBIT 4</u>

# EMAIL

holman fenwick willan 

**Please contact us immediately if all pages are not received.**
**Total pages including this sheet: 2**

| | | |
|---|---|---|
| **To:** | DLA Piper Hong Kong | Holman Fenwick Willan LLP |
| **Attention:** | Nicholas Mallard | Friary Court |
| **Your Ref:** | TBC | 65 Crutched Friars |
| **Email:** | Nicholas.Mallard@dlapiper.com | London EC3N 2AE |
| | | England |

| | |
|---|---|
| **From:** | Batiste Weijburg / Rory Butler |
| **Our Ref:** | RDB/3669-142 |
| **Direct Line:** | +44 (0)20 7264 8248 / 8310 |
| **Email:** | baptiste.weijburg@hfw.com / rory.butler@hfw.com |
| **Date:** | 1 June 2013 |

T: +44 (0)20 7264 8000
F: +44 (0)20 7264 8888
DX1069 London City EC3

**hfw.com**

**Re:**     **"OCEAN PREFECT" - Charterparty dated 19**
**October 2012 – Notice of Arbitration**

Dear Sirs,

We refer to the time charterparty for the m.v. "OCEAN PREFECT" dated 19 October 2012 (the "Charterparty") between our clients, Messrs. Lauritzen Bulkers A/S ("Owners") and your clients, Messrs. JIT International Corporation Limited ("Charterers"). As you are aware, we represent Owners in relation to their claims against Charterers under the Charterparty.

Pursuant to Clauses 17 and 73 of the Charterparty, we hereby serve notice on you that we have appointed Mr Edward Mocatta on behalf of our clients as arbitrator in relation to all and any disputes arising under the Charterparty.

Mr Edward Mocatta's contact details are as follows:

Suite 4, 4th Floor
Linton House
39-51 Highgate Road
London
NW5 1RS
Tel: +44 (0) 20 7428 7708
Fax: +44 (0) 20 7428 7709
e-mail: e.mocatta@btinternet.com

Pursuant to 73 of the Charterparty and Section 16(6) of the Arbitration Act 1996, you are required to appoint your arbitrator, or agree to Mr Edward Mocatta as sole arbitrator, within 14 calendar days of service of this notice of appointment of our clients' arbitrator and send us notice of this appointment or agreement. If you do not appoint your arbitrator and notify us that you have done so, or agree to Mr Edward Mocatta as sole arbitrator, within 14 calendar days of this notice, our clients may move to appoint Mr Edward Mocatta as sole arbitrator in this reference pursuant to Clause 73 of the Charterparty and Section 17 of the Arbitration Act 1996.

**Lawyers for international commerce**

Confidentiality Notice
This email (and any attachments) is confidential and may be privileged. It may be read, copied and used only by the intended recipients, and must not be re-transmitted in an amended form without our consent. If you have received it in error, please notify us immediately
Please then destroy it and do not disclose its contents to anyone

Sao Paulo  London  Paris  Rouen  Brussels  Geneva  Piraeus  Dubai  Hong Kong  Shanghai  Singapore  Melbourne  Sydney  Perth

Holman Fenwick Willan LLP is a limited liability partnership registered in England and Wales (with registered number OC343351) and is authorised and regulated by the Solicitors Regulation Authority.
This firm's registration number is 60997 /  A list of members' names is open to inspection at the registered office, Friary Court, 65 Crutched Friars, London EC3N 2AE  | VAT No GB 243 4838 55

Page No 2                                                              holman fenwick willan 

We look forward to receiving confirmation of the appointment of your clients' arbitrator and or your agreement to appoint Mr Edward Mocatta as sole arbitrator

We look forward to receiving confirmation of the appointment of your clients' arbitrator

Your faithfully,

**Holman Fenwick Willan LLP**

HFWLDN\18594214 1

**EXHIBIT 5**

# CERTIFICATION REGARDING CORRESPONDENT ACCOUNTS
# FOR FOREIGN BANKS

*The information contained in this Certification is sought pursuant to Sections 5318(j) and 5318(k) of Title 31 of the United States Code, as added by sections 313 and 319(b) of the USA PATRIOT Act of 2001 (Public Law 107-56).*

This Certification should be completed by any **foreign bank** that maintains a **correspondent account** with any U S bank or U S broker-dealer in securities (a **covered financial institution** as defined in 31 C F R 103 175(f)) An entity that is not a foreign bank is not required to complete this Certification

A **foreign bank** is a bank organized under foreign law and located outside of the United States (see definition at 31 C F R 103 11(o)) A **bank** includes offices, branches, and agencies of commercial banks or trust companies, private banks, national banks, thrift institutions, credit unions, and other organizations chartered under banking laws and supervised by banking supervisors of any state (see definition at 31 C F R 103 11(c)) *

A **Correspondent Account** for a foreign bank is any account to receive deposits from, make payments or other disbursements on behalf of a foreign bank, or handle other financial transactions related to the foreign bank

*Special instruction for foreign branches of U S banks* A branch or office of a U S bank outside the United States is a foreign bank Such a branch or office is not required to complete this Certification with respect to Correspondent Accounts with U S branches and offices of the same U S bank

*Special instruction for covering multiple branches on a single Certification* A foreign bank may complete one Certification for its branches and offices outside the United States The Certification must list all of the branches and offices that are covered and must include the information required in Part C for **each** branch or office that maintains a Correspondent Account with a Covered Financial Institution Use attachment sheets as necessary

**A.**    The undersigned financial institution, **The Hongkong and Shanghai Banking Corporation Limited** ("**Foreign Bank**") hereby certifies as follows

---

*A "foreign bank" does not include any foreign central bank or monetary authority that functions as a central bank, or any international financial institution or regional development bank formed by treaty or international agreement

**B.     Correspondent Accounts Covered by this Certification:** Check **one** box

☑    This Certification applies to **all** accounts established for Foreign Bank by Covered Financial Institutions.

☐    This Certification applies to Correspondent Accounts established by _____ (name of Covered Financial Institution(s)) for Foreign Bank

**C.     Physical Presence/Regulated Affiliate Status** Check **one** box and complete the blanks

☑    Foreign Bank maintains a **physical presence** in any country   That means

- Foreign Bank has a place of business at the following street address <u>PLEASE SEE ATTACHED LIST,</u> where Foreign Bank employs one or more individuals on a full-time basis and maintains operating records related to its banking activities
- The above address is in <u>PLEASE SEE ATTACHED LIST</u> (insert country), where Foreign Bank is authorized to conduct banking activities
- Foreign Bank is subject to inspection by <u>PLEASE SEE ATTACHED LIST,</u> (insert Banking Authority), the banking authority that licensed Foreign Bank to conduct banking activities

☐    Foreign Bank does not have a physical presence in any country, but Foreign Bank is a **regulated affiliate**   That means

- Foreign Bank is an affiliate of a depository institution, credit union, or a foreign bank that maintains a physical presence at the following street address _____, where it employs one or more persons on a full-time basis and maintains operating records related to its banking activities
- The above address is in _____ (insert country), where the depository institution, credit union, or foreign bank is authorized to conduct banking activities
- Foreign bank is subject to supervision by _____, (insert Banking Authority), the same banking authority that regulates the depository institution, credit union, or foreign bank

☐    Foreign Bank does **not** have a physical presence in a country and is **not** a regulated affiliated

**D.     Indirect Use of Correspondent Accounts** Check box to certify

☑    No Correspondent Account maintained by a Covered Financial Institution may be used to indirectly provide banking services to certain foreign banks Foreign Bank hereby certifies that it does **not** use any Correspondent Account with a Covered Financial Institution to indirectly provide banking services to any foreign bank that does not maintain a physical presence in any country and that is not a regulated affiliate

**E.**     **Ownership Information**   Check box 1 or 2 below, **if applicable**

☐  1   **Form FR Y-7 is on file.**  Foreign Bank has filed with the Federal Reserve Board a current Form FR Y-7 and has disclosed its ownership information on Item 4 of Form FR Y-7

☐  2   **Foreign Bank's shares are publicly traded.**  Publicly traded means that the shares are traded on an exchange or an organized over-the-counter market that is regulated by a foreign securities authority as defined in section 3(a)(50) of the Securities Exchange Act of 1934 (15 U S C 78c(a)(50))

If **neither** box 1 or 2 of Part E is checked, complete item 3 below, **if applicable**

☑  3   Foreign Bank has no **owner(s)** except as set forth below.  For purposes of this Certification, **owner** means any person who, directly or indirectly, (a) owns, controls, or has the power to vote 25 percent or more of any class of voting securities or other voting interests of Foreign Bank, or (b) controls in any manner the election of a majority of the directors (or individuals exercising similar functions) of Foreign Bank   For purposes of this Certification, (i) **person** means any individual, bank, corporation, partnership, limited liability company or any other legal entity, (ii) **voting securities or other voting interests** means securities or other interests that entitle the holder to vote for or select directors (or individuals exercising similar functions), and (iii) members of the same family* shall be considered one **person**.

| Name | Address |
|------|---------|
| Direct Owner<br>HSBC Asia Holdings BV | De entree 242  1101 EE, Amsterdam, Netherlands |
| Indirect Owner<br>HSBC Holdings plc | 8 Canada Square, London E14 5HQ, United Kingdom |

**F.**     **Process Agent:**  complete the following

The following individual or entity  <u>Office of the Secretary, HSBC Bank USA</u> is a resident of the United States at the following street address <u>One HSBC Center, 24 Floor, Buffalo, NY 14203, USA</u>, **and** is authorized to accept service of legal process on behalf of Foreign Bank from the Secretary of the Treasury or the Attorney General of the United States pursuant to Section 5318(k) of title 31, United States Code

---

*The same family means parents, spouses, children, siblings, uncles, aunts, grandparents, grandchildren, first cousins, stepchildren, stepsiblings, parents-in-law and spouses of any of the foregoing  In determining the ownership interests of the same family, any voting interest of any family member shall be taken into account

G.      General

Foreign Bank hereby agrees to notify in writing each Covered Financial Institution at which it maintains any Correspondent Account of any change in facts or circumstances reported in this Certification   Notification shall be given within 30 calendar days of such change

Foreign Bank understands that each Covered Financial Institution at which it maintains a Correspondent Account may provide a copy of this Certification to the Secretary of the Treasury and the Attorney General of the United States   Foreign Bank further understands that the statements contained in this Certification may be transmitted to one or more departments or agencies of the United States of America for the purpose of fulfilling such departments' and agencies' governmental functions

I, _Alan Thomas_  (name of signatory), certify that I have read and understand this Certification, that the statements made in this Certification are complete and correct, and that I am authorized to execute this Certification on behalf of Foreign Bank

The Hongkong and Shanghai Banking Corporation Limited
[Name of Foreign Bank]

[Signature]

Alan Thomas
[Printed Name]

Managing Director, Deputy Head of Global Banking, Asia-Pacific
[Title]

Executed on this 27th day of April 2012

**Received and reviewed by:**

Name    _____
Title    _____
For      _____
            [Name of Covered Financial Institution]

Date    _____

**EXHIBIT 6**



| | | |
|---|---|---|
| Account | LAURITZEN BULKERS - 3001881485 USD | Danske Bank |
| IBAN | DK9230003001881485 | Corporate Clients DK |
| Account holder | LAURITZEN BULKERS A/S | Holmens Kanal 2 |
| | | 1060 København K |
| | | Telephone 45127500 |
| | | Fax 45138819 |
| | | BIC/SWIFT  DABADKKK |
| | | www danskebank dk |

**We have received the following transfer:**

### Posting details

| | |
|---|---|
| Entry type | Transfers from abroad |
| Text | Payment 3825-0027239117 |
| Orderer | JIT INTERNATIONAL TRADING |
| | CO , LIMITED |
| | ATTN XU DAPENG,22 BLDG HAI YI VILLA |
| | I CHINA 200120 ID 1352517 |
| Ordering bank | HONGKONG AND SHANGHAI BANKING CORPO |
| | RATION LIMITED, THE |
| | 1, QUEEN'S ROAD |
| | HONG KONG |
| Received from | HSBC BANK USA, N A |
| Informed beneficiary | /DK9230003001881485 |
| | LAURITZEN BULKERS A/S |

### Settlement information

| | | |
|---|---|---|
| Received amount | 167 438,33 USD | Original amount  167 463,33 USD |
| Costs | 40,00 DKK | The fee will be charged separately as agreed |
| | | The fee of 25,00 USD has been deducted by the sending bank |
| | | The fee will be charged to your account 3001881477 |
| Amount posted | 167 438,33 USD | |
| Status | Settled | |
| Costs | The beneficiary will pay | |
| | all charges | |
| Entry date | 31 10 2012 | |
| Interest date | 02 11 2012 | |

### Message

| | |
|---|---|
| Message to beneficiary | 1ST HIRE FOR MV OCEAN PERFECT |
| | JIT089 |
| File comment | |
| Advice note reference | 3825-0027239117 |
| Sender s reference | 305347796 |

### Technical posting information

| | |
|---|---|
| Sender s reference | 3825 |
| System | Incoming foreign payments |
| Transmitted on | 31 10 2012 |
| Created on | 2012-10-31-17 34 51 028224 |
| Received on | 2012-10-31-17 34 51 029926 |
| Source | OFU-0027239117 |



| | | Danske Bank |
|---|---|---|
| Account | LAURITZEN BULKERS - 3001881485 USD | Danske Bank |
| IBAN | DK9230003001881485 | Corporate Clients DK |
| Account holder | LAURITZEN BULKERS A/S | Holmens Kanal 2 |
| | | 1060 København K |
| | | Telephone 45127500 |
| | | Fax 45138819 |
| | | BIC/SWIFT  DABADKKK |
| | | www danskebank dk |

**We have received the following transfer:**

**Posting details**

| | |
|---|---|
| Entry type | Transfers from abroad |
| Text | Payment 3825-0027967565 |
| Orderer | PALMAILLE HOLDINGS LTD |
| | 22 BLDG HAI YI VILLA 97 SONG LIN RD |
| | PUDONG NEW AREA SHANGHAI |
| | CHINA 200120 |
| Ordering bank | HONGKONG AND SHANGHAI BANKING CORPO |
| | RATION LIMITED, THE |
| | 1, QUEEN'S ROAD |
| | HONG KONG |
| Received from | HSBC BANK USA, N A |
| Informed beneficiary | /DK9230003001881485 |
| | LAURITZEN BULKERS A/S |

**Settlement information**

| | | |
|---|---|---|
| Received amount | 332 044,77 USD | Original amount  332 069,77 USD |
| Costs | 40,00 DKK | The fee will be charged separately as agreed |
| | | The fee of 25,00 USD has been deducted by the sending bank |
| | | The fee will be charged to your account 3001881477 |
| Amount posted | 332 044,77 USD | |
| Status | Settled | |
| Costs | The beneficiary will pay | |
| | all charges | |
| Entry date | 27 12 2012 | |
| Interest date | 28 12 2012 | |

**Message**

| | |
|---|---|
| Message to beneficiary | HIRE FOR MV TOKYO BULKER 084 AND |
| | MV OCEAN PREFECT 089 |
| File comment | |
| Advice note reference | 3825-0027967565 |
| Sender's reference | 359317153 |

**Technical posting information**

| | |
|---|---|
| Sender's reference | 3825 |
| System | Incoming foreign payments |
| Transmitted on | 24 12 2012 |
| Created on | 2012-12-24-16 36 20 556298 |
| Received on | 2012-12 24-16 36 20 557758 |
| Source | OFU 0027967565 |

# HSBC 

| | |
|---|---|
| Advice sending date | 13 Mar 2013 |
| Advice reference no | B31306663541 |

Payment Advice            Page                1/1

XU
xdp2358@163.com

Transaction type

| | | | |
|---|---|---|---|
| Beneficiary's name | LAUR**ZEN BUL***S A* | Debit amount | USD40 336 00 |
| Ber f c ar s b nt | DANSKE BANK A/S | Remittance amount | USD40 321 15 |
| | HEAD OFFICE | Local and overseas charges | Remitting bank charges are collected from Remitter  Beneficiary pays Beneficiary bank charges |
| | 2 12 HOLMENS KANAL | | |
| | 1092 COPENHAGEN K DENMARK | | |
| | DABADKKK | Value date | 13 Mar 2013 |
| Beneficiary's account | DK9240003001 8***** | Remitter's name | J** INTERN******L CORPO*****N |
| | (Part of the account number is shown as ***** for security reasons ) | Remitting bank | The Hongkong and Shanghai Banking Corporation Limited |
| Il reference number | HK113033BI844972 | Instruction reference | N31390040511 |

Message from remitter
<No details are provided>

Important notes
This Advice is issued at the request of our customer  It purports to set out certain details of the transaction that our Bank was instructed to effect  This is NOT a confirmation that the transaction has been or will be effected  You should conduct your own verification and confirmation regarding the information set out in this Advice including  without limitation  the status of the transaction mentioned in it  this Advice is for you  reference only  nd  s not to be relied upon by you or any one for any purpose  We have not verified the content of this Advice and  are so  espons bilits therefor  Where this Advice is sent by facsimile or over the internet  you should take note that communication by  facs m l  or over the  nt rnet may be interrupted  delayed or fail  In particular  e mail messages sent via the internet cannot be gua nteed t  e secure  error or v rus free as information could be intercepted  corrupted  lost  arrive late or contain viruses  The Bank shall be t no   ib lity whatsoever for any direct  indirect or consequential loss arising out of this Advice being sent by facsimile or over the internet whether caused by the Bank or other third parties  The information contained in this Advice is confidential  It may also be legally privileged  If you are not the addressee you may not copy, forward, disclose or use any part of it

Issued by The Hongkong and Shanghai Banking Corporation Limited